2024 IL App (1st) 241747-U

SIXTH DIVISION
December 6, 2024

No. 1-24-1747B

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23 CR 5830 |
| | ) | |
| MITCHELL DAVIS, | ) ) | Honorable Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Tailor and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:*    We affirm both the circuit court's initial pretrial detention and continued detention orders over defendant's arguments that he did not pose a substantial risk if released, was not a flight risk, and electronic monitoring could mitigate any risk he posed.

¶ 2    Defendant Mitchell Davis appeals from the circuit court's orders detaining him pending trial per article 110 of the Code of Criminal Procedure of 1963 (725 ILC 5/art. 110 (West 2022), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023) and Public Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act)), generally disputing the court's findings that he posed a substantial risk or threat if released, was a flight risk, and that no less restrictive condition than pretrial detention could mitigate the risk he posed. We affirm.

¶ 3                                            BACKGROUND

¶ 4    Davis was arrested on April 21, 2023, and charged with multiple offenses, including armed robbery, armed habitual criminal (AHC), and aggravated discharge of a firearm.

¶ 5    Davis filed a *pro se* petition for pretrial release on December 1, 2023. Therein, he stated that if released, he planned to live with his mother. He was a father and grandfather who worked as a barber. His last conviction occurred in 2002, and he did not have a history of "bail jumping." Davis also argued he was a good candidate for electronic monitoring. The State filed a petition for a pretrial detention hearing that same day. On the petition form, the State checked a box indicating it sought detention based on Davis posing a real and present threat but did not check a box indicating Davis posed a risk of willful flight from prosecution.

¶ 6    Also on December 1, 2023, the circuit court held a hearing on the parties' competing petitions, at which Davis appeared *pro se*. Davis read the contents of his petition into the record. The State proffered that Davis, and a co-defendant were arrested pursuant to an incident that occurred on April 21, 2023, at approximately 12:37 a.m., in a parking garage on the 500 block of South State Street in Chicago. During the incident, Davis, while possessing a firearm, approached two victims (Victim 1 and Victim 2) as they waited for an elevator and demanded they give him "everything they had." Davis took "three cell phones, $1000 ***, a Louis Vuitton wallet and ***

car keys" from Victim 2's person. His co-defendant then emerged from the staircase and pointed a firearm at Victim 1. Another offender, holding a firearm with a "drum magazine," was also present in the stairway. Victim 2 attempted to flee, and Davis fired one shot towards him. The third offender then dropped the drum magazine, and Victim 1 also fled.

¶ 7 Victim 2 eluded Davis and "ran to the doorman of the parking garage, who then called 911." Victim 1, meanwhile, ran to a higher level of the garage and also called 911. Chicago police officers arrived "within 10 minutes" and blocked the garage's exits. As officers investigated, they stopped a vehicle attempting to exit the garage. The co-defendant drove the vehicle, with Davis in the rear passenger seat. The co-defendant exited the vehicle and unsuccessfully attempted to flee on foot, while Davis remained seated. Officers recovered a firearm under the rear passenger seat, along with a second firearm and Victim 2's keys from other locations in the vehicle. They also recovered a shell casing and drum magazine from the stairway. The casing matched the firearm recovered under the rear passenger seat near Davis. Both victims positively identified Davis and his co-defendant in a show-up on scene, and DNA from the firearm recovered under the rear passenger seat matched his DNA.

¶ 8 The State further proffered that Davis had two prior Class X convictions, which could subject him to a "mandatory sentence of life in prison" if he was convicted of a third Class X offense in the present case. The prior convictions included a 2003 conviction for home invasion while "armed with a firearm" and a 1997 conviction for "attempt murder, home invasion, and armed robbery." Davis also had convictions for unlawful use of a weapon from 1994 and possession of a stolen motor vehicle from 1992. He violated his probation regarding the 1992 conviction.

¶ 9    Davis responded that the discovery suggested "the DNA report had [come] back negative." He further contended the police reports stated the perpetrators wore ski masks, which called the show-up identifications into question. Davis also believed the officers' body cam footage would display that the vehicle in which he traveled did not contain firearms, meaning the officers "planted" them.

¶ 10    The circuit court ordered Davis detained pending trial. In so ordering, the court explained that Davis "poses a real and present threat" if released pretrial because he "took personal property from two victims in a parking garage by force. Each offender was brandishing a firearm. Defendant discharged his firearm toward one offender." On mitigating conditions, the court stated, "Less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community *** because the defendant fired at a fleeing victim and the defendant was arrested at the scene while trying to escape." The court also found pretrial detention was appropriate based on flight risk, stating, "Less restrictive conditions would not prevent the defendant's willful flight from prosecution, because the defendant tried to flee the parking garage with the co-offender." The court continued, "Both victims identified the defendant on the scene, in a show-up. A firearm was recovered in the defendant's vehicle that matched the defendant's DNA, and the defendant has previously been convicted of two prior Class X felonies, making this a mandatory natural life case."

¶ 11    The circuit court's December 1, 2023 pretrial detention order stated regarding the real and present threat Davis posed, "Defendant and [two] co-offenders took personal property from two victims in a parking garage by force. Each offender was brandishing a firearm. Defendant discharged his firearm toward" a victim. Respecting why no condition or combination of conditions could mitigate the harm, the court wrote, "defendant fired at a fleeing victim. Defendant

was arrested at the scene while trying to escape." On willful flight, the court wrote that Davis "tried to flee the parking garage [and] both victims identified defendant in a show-up. A firearm in defendant's vehicle matches defendant's DNA. Defendant has previously been convicted of two prior Class X felonies making this a mandatory natural life case."

¶ 12   Shortly thereafter, Davis, while incarcerated, sent a document to the circuit court, which the clerk's office stamped "received" on December 21, 2023. In the document, titled "Motion to Appeal Pretrial Release," Davis moved the court to "appeal decision previously made and reconsider the defendant's pretrial release." The document also contained his initial motion for pretrial release, now with the handwritten date of December 13, 2023, at the end. There is no additional information in the record explaining the circumstances under which Davis mailed this document, or if any further action was taken on it by the parties, court, or clerk's office.

¶ 13   The public defender was appointed to represent Davis on March 6, 2024, and on July 3, 2024, the circuit court ordered Davis to remain detained following a subsequent court appearance. During the appearance, the assistant public defender representing Davis contended he was not a flight risk, emphasized he cooperated with the Chicago police officers during his arrest, and proposed electronic monitoring as an appropriate less restrictive condition than detention. Counsel acknowledged his prior convictions subjected him to an AHC charge, but contended that following his parole in 2009, Davis had no subsequent "felony arrests," and instead worked steadily in construction and as a barber.

¶ 14   The State responded by essentially repeating the proffer from the December 1, 2023 hearing and adding that Davis had "at the time this matter came in, a warrant outstanding [from] Duluth, Minnesota for failure to appear," which "obviously demonstrate[d] his clear flight risk." Regarding electronic monitoring, the State argued it "would not be enough" because the alleged

incident occurred within minutes, meaning Davis could engage in similar behavior, even if on electronic monitoring, before the police could respond.

¶ 15   In continuing pretrial detention, the circuit court stated that Davis posed "a real and present threat" because he was "implicated in a violent criminal act against two victims. One of those victims, while attempting to escape, was fired upon." The court continued that the proffered evidence showed Davis was at least in "constructive possession" of one of two recovered firearms, and concluded, "Based on the specific articulable facts of this case as outlined by the State, any less restrictive conditions would not avoid a real and present threat."

¶ 16   On August 13, 2024, Davis filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Therein, Davis contended that while *pro se*, he attempted to appeal the December 1, 2023 order, referencing the document stamped "received" on December 21, 2023. Davis claimed he mailed the document on December 13, 2023, but it was erroneously never transmitted to the appellate court. Substantively, Davis challenged both the December 1, 2023 initial detention order and the July 3, 2024 continued detention order. First, on initial detention, Davis argued the State failed to meet its burden to show he posed a real and present threat via clear and convincing evidence. He next contended the State offered "no evidence to support a ruling that no condition or combination [of] conditions could mitigate the threat [he] poses." Davis complained that in deciding this issue, the circuit court only referred to the State's proffer, and did not address specific conditions of release such as electronic monitoring. Finally, Davis argued the court erred by detaining him based on flight risk, contending the court only cited the proffered facts of his alleged attempt to exit the parking garage, and there was no evidence of prior failures to appear or escape charges.

¶ 17   Regarding the continued detention order, Davis argued the circuit court erred because the "facts developed at the July 3, 2024 hearing" showed "continued detention is not necessary to avoid a real and present threat." Davis noted that he cooperated with the arresting officers, "did not act violently or try to evade arrest," and was merely "a compliant passenger in a car the police suspected of being involved in the robbery." He also argued the court failed to explain on the record why less restrictive conditions could not mitigate his risk, citing *People v. Stock*, 2023 IL App (1st) 231753. If placed on electronic monitoring, Davis claimed it could be "tailored to concerns" specific to his case and cited a "lack of criminal history since he was released from his most recent felony conviction in 2009" as evidence he could respect conditions of release.

¶ 18   At the August 13, 2024 hearing on the motion for relief, the assistant public defender primarily stood on the arguments in the written motion, but added, "I don't think [the circuit court] made the requisite findings that Mr. Davis poses such a threat that there's no condition or combination of conditions that could mitigate a threat." Counsel continued that the court and State "cannot simply rely on *** the facts of the case alone" in making the determination. The State responded that it proffered more facts than only the allegations underlying the case to show no less restrictive conditions could mitigate his threat—specifically, that (1) Davis tried to flee the scene of the crime; (2) the incident occurred within minutes, meaning electronic monitoring would not mitigate the risk of a similar incident occurring within a similar timeframe; and (3) Davis had an extensive criminal history and an outstanding Minnesota warrant.

¶ 19   The circuit court denied the motion for relief, explaining, "The case is one involving extreme violence," and Davis "has prior Class X felonies. This could potentially be a mandatory natural life case. The two victims in this case need to be protected from the possibility of the defendant while out on pretrial release in some capacity, electronic monitoring, and who's to say

7

he won't flee again?" For the court, those factors "all add up to someone that poses an extreme risk to society, to the community, to the victims and poses a flight risk." This appeal followed.

¶ 20                                    JURISDICTION

¶ 21    The circuit court denied the motion for relief on August 13, 2024, and Davis filed this appeal on August 16, 2024. There is no indication that Davis has been convicted or is otherwise no longer detained pending trial, meaning this court has jurisdiction to consider this appeal pursuant to Illinois Supreme Court Rule 604(h)(2), (3) (eff. Apr. 15, 2024) and 725 ILCS 5/110-6.1(j) (West 2022).

¶ 22    The above does not end the jurisdictional consideration for this matter. The State argues that Davis forfeited any claims arising from the December 1, 2023 initial detention order because Davis has not demonstrated he timely filed a notice of appeal within 14 days of that order, as the version of Rule 604(h) in effect at the time required. See Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023) (notice of appeal from any pretrial detention order must be filed within 14 days). The 14-day requirement has now been removed. Ill. S. Ct. R. 604(h)(2), (3) (eff. Apr. 15, 2024). Although the State argues the claims are "forfeited," and does not elaborate beyond citing the old version of the rule, the issue it raises is whether this court has jurisdiction to consider the December 1, 2023 claims. Accordingly, we must substantively consider the issue, even if not fully briefed by the parties, because reviewing courts have an independent duty to consider their own jurisdiction. *Village of Kirkland v. Kirkland Properties Holding Company, LLC I*, 2023 IL 128612, ¶ 37.

¶ 23    Our first step is to determine if Davis filed a valid notice of appeal within 14 days of the December 1, 2023 order, which then was not transferred to the appellate court due to a clerical error, as he claims. If the record confirms his characterization, then he properly preserved the

claims, and we need not consider the effect of the change to Rule 604(h). If not, we must determine whether the updated Rule 604(h) applies retroactively to permit his claims.

¶ 24    The record shows that Davis filed a document he titled "Motion to Appeal Pretrial Release" following entry of the December 1, 2023 order, which the circuit court clerk stamped "received" on December 21, 2023. In the document, Davis writes that he "moves this honorable court to appeal decision previously made and reconsider the defendant's pretrial release." The document does not contain any reference to the appellate court. Instead, it only attached his initial petition for pretrial release, which now contained the handwritten date "December 13, 2023" at the end. The record contains no additional information regarding how the document was mailed.

¶ 25    Based on this record, we find that Davis did not file a timely notice of appeal from the December 1, 2023 order. Instead, we find the document marked "received" on December 21, 2023, despite generally referencing an "appeal," was an attempt to file a motion to reconsider the December 1, 2023 order, which Davis, acting *pro se*, titled erroneously, an issue we may correct based on the contents of the document. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002).

¶ 26    We find that even if we construed the filing as a notice of appeal, Davis has not sufficiently demonstrated that it was timely mailed. The circuit court's order was entered on December 1, 2023, making the notice of appeal due on or before December 15, 2023. Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023). The document was not received until December 21, 2023. In this situation, for the filing to be timely, Illinois law requires Davis to demonstrate that he mailed the document, on or before December 15, 2023, in substantial compliance with Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017). See *People v. Shunick*, 2024 IL 129244, ¶¶ 27-34. This requires Davis, acting at the time as "a self-represented litigant residing in a correctional facility," had to provide

a "certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). There is no doubt Davis failed to substantially comply with this requirement, as the simple writing of "December 13, 2023" falls far short of the necessary certification.

¶ 27   Having found that Davis did not file a notice of appeal within 14 days of entry of the December 1, 2023 order, it follows that we can only exercise jurisdiction over claims arising from that order if the new version of Rule 604(h) applies retroactively. As updated, Rule 604(h) excuses the 14-day requirement and allows a litigant to bring any claims arising from the course of pretrial detention proceedings, provided a motion for relief is filed and resolved first. See Ill. S. Ct. R. 604(h)(2), (3) (eff. Apr. 15, 2024). Davis filed his notice of appeal on August 16, 2024, after the April 15, 2024 version of Rule 604(h) took effect, and following the resolution of his motion for relief on August 13, 2024.

¶ 28   To determine if a statute or supreme court rule applies retroactively, Illinois courts look to the United States Supreme Court's test from *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). See *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 36-39 (2001); see also *People v. Easton*, 2018 IL 122187, ¶ 13 (courts apply the same retroactivity analysis whether considering a statute or a supreme court rule). *Landgraf*, as explained by our supreme court in *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶¶ 19-20, established a two part test for retroactivity: (1) if the statute "clearly" indicates its "temporal reach," the legislature's expressed intent will be applied; (2) if no temporal reach is expressed, then the court must examine the "retroactive impact" of the law or rule. In Illinois, however, courts do not reach the second consideration due to the principles contained in the Statute on Statutes (5 ILCS 70/4 (West 2022)).

*Id.* ¶ 20. Instead, if it is determined that the statute or rule does not clearly express an intent as to temporal reach, the reviewing court is to apply procedural changes retroactively, and substantive changes only prospectively. *Id.* Additionally, procedural changes can only be applied retroactively to ongoing proceedings. *People v. Hunter*, 2017 IL 121306, ¶¶ 30-31. Under this structure, our jurisdiction here turns on whether a change to the timing of the filing of a notice of appeal is a procedural or substantive change.

¶ 29    We hold that the change in Rule 604(h) to remove the 14-day filing requirement for notices of appeal was a procedural change that applies retroactively. The Illinois Supreme Court in *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011), stated unequivocally that notices of appeal are procedural: "A notice of appeal is a procedural device filed with the trial court that, when timely filed, vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed or modified." This characterization is consistent with *Landgraf*, where the United States Supreme Court discussed, at length, the principle that, "We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf*, 511 U.S. at 274. This holding also aligns with the actual function of the change; the new Rule 604 only alters how litigants present substantive challenges to a pretrial detention determination, and not the content of the substantive challenges themselves, and such a change to the course of proceedings is a procedural change subject to retroactive application. *Easton*, 2018 IL 122187, ¶ 19. In so holding, we note that our conclusion is in accordance with two other panels of this court. See *People v. Perez-Salazar*, 2024 IL App (3d) 240326-U, ¶¶ 14-16; *People v. Lasenby*, 2024 IL App (1st) 240918-U, ¶¶ 23-27.

¶ 30   Because the rule change was procedural, and the case is ongoing while Davis remains detained pretrial, the requirements for retroactive application of Rule 604(h) as amended on April 15, 2024 have been met, and we may exercise jurisdiction over the claims arising from the December 1, 2023 order.

¶ 31   Before moving on, we note the concerns relayed by another panel of this court in *People v. Milner*, 2024 IL App (1st) 241284, ¶¶ 20-25. There, the court expressed doubt as to whether a notice of appeal was in fact procedural for purposes of retroactivity because it conferred jurisdiction, citing *Fredman Brothers Furniture Co, Inc. v. Department of Revenue*, 109 Ill. 2d 202, 208-09 (1985), for the proposition that a statute that confers jurisdiction might be substantive in nature. The *Milner* court's concerns are understandable, as *Fredman* dealt with the Administrative Review Act, a legislative creation, and The Pretrial Fairness Act shares this origin. We do not believe *Fredman*, however, overrides the guidance offered by the general proposition in *General Motors* that notices of appeal are procedural mechanisms, especially in light of the fact that our supreme court explicitly limited *Fredman* to the administrative review context in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A, Inc.*, 199 Ill. 2d 325, 338-340 (2002). Moreover, as noted above, *Landgraf* expressly states that statutes or rules conferring or removing jurisdiction can be applied retroactively. *Landgraf*, 511 U.S. at 274.[1]

¶ 32   Here, we find we have jurisdiction to consider all of the claims, including those from the December 1, 2023 order, because the updated version of Rule 604(h) applies retroactively.

---

[1] The *Milner* court also expressed concern regarding retroactive application of the new Rule 604(h) in a scenario, like here, where both initial and subsequent pretrial detention orders are at issue because "the initial order may no longer represent the basis on which the defendant is being held." *Milner*, 2024 IL App (1st) 241284, ¶ 24. Our situation does not invoke this concern as it is apparent that the circuit court maintained detention after the July 3, 2024 hearing based on both the factual findings it made at the December 1, 2023 hearing, and the additional proffers from July 3. We express no opinion on the resolution of the *Milner* court's concern in a case that appropriately presents it.

¶ 33                                    ANALYSIS

¶ 34    On appeal, Davis contends the circuit court erred by (1) ordering his initial detention on December 1, 2023, and (2) ordering his continued detention on July 3, 2024.

¶ 35    A criminal defendant is presumed eligible for release and cannot be detained pending trial unless the State files a pretrial detention petition. 725 ILCS 5/110-6.1(a), (a)(1)-(8), (e) (West 2022). After the State files the petition, the circuit court must conduct a pretrial detention hearing, during which the parties can proceed by way of proffer to present the anticipated evidence of the case. *Id.* §§ 110-6.1(c)(2), (e), (f)(2). At the hearing, the State bears the burden to establish by clear and convincing evidence that, in relevant part, (1) "the proof is evident or the presumption great that the defendant has committed" a qualifying offense; (2) the defendant poses a "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) "no condition or combination of conditions" can mitigate the threat the defendant poses. *Id.* §§ 110-6.1(e)(1)-(3).

¶ 36    If the circuit court grants the State's petition, it must issue a written detention order "summarizing the court's reasons for concluding that the defendant should be denied pretrial release." *Id.* § 110-6.1(h)(1). Specifically, regarding mitigating conditions, the State cannot make this showing based only on the bare allegations of a violent underlying alleged offense, and the court must explain on the record why less restrictive conditions could not mitigate. *Stock*, 2023 IL App (1st) 231753, ¶¶ 20-21; *People v. Castillo*, 2024 IL App (1st) 232315, ¶¶ 30-32.

¶ 37    If a defendant is detained pretrial, the Act "also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. The statute requires, "At each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat

13

to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). At a subsequent appearance, the State need not make the factual showings required at the initial pretrial detention hearing, and the Act does not assign either party a burden of proof respecting the continued detention finding. *Id.*; *Hongo*, 2024 IL App (1st) 232482, ¶ 27.

¶ 38   While the standard of review for claims arising from the Act remains unsettled, we believe a two-tiered standard is appropriate, under which the circuit court's findings of fact are reviewed under the manifest weight of the evidence standard, but the ultimate decision on pretrial detention is reviewed for abuse of discretion. *People v. Johnson*, 2024 IL App (1st) 240154, ¶ 16. Consistent with the two-tiered approach, we will also apply the abuse of discretion standard to a court's continued detention decision following a subsequent appearance. See *People v. Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13.

¶ 39   As of April 15, 2024, appellants pursuing claims under the Act must now first file a "motion for relief" in the circuit court. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The rule states, "The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." *Id.*

¶ 40   Turning to the claims here, we first note that in his notice in lieu of memorandum per Rule 604(h)(7), Davis raised an issue he did not include in his motion for relief—that he should not have been detained on the grounds that he posed a flight risk because the State did not move under that ground in its initial petition. We find this claim is waived per the requirement of Rule 604 that any claim pursued on appeal must first be raised in the motion for relief. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 41    Davis first claims regarding the initial pretrial detention hearing of December 1, 2023, that the circuit court erred by finding that he posed a real and present threat under 725 ILCS 5/110-6.1(e)(2) (West 2022). Davis did not provide any substantive argument in support of this claim in his motion for relief, and did not provide further explanation at the motion for relief hearing. Accordingly, this claim fails. See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 33.

¶ 42    Davis next claims the circuit court erred by finding at the December 1, 2023 hearing that no condition or combination of conditions could mitigate the threat he posed. At the initial hearing, the State proffered that Davis had two prior Class X felonies and potentially qualified for a life sentence if convicted. The two convictions were for violent crimes that both involved weapons, and Davis also had a probation violation and two other convictions. The court stated no mitigating conditions existed specifically "because the defendant fired at a fleeing victim and the defendant was arrested at the scene while trying to escape," but also noted such conditions would not mitigate flight risk because Davis had "two prior Class X felonies" which made "this a mandatory natural life case." The court's written order repeated the above.

¶ 43    We find the State proffered sufficient facts to constitute clear and convincing evidence that no less restrictive conditions existed to mitigate the threat Davis posed, and thus the circuit court's finding was not against the manifest weight of the evidence. The nature of the alleged offense, which involved firing at a victim in a public parking garage, combined with the repetition of serious violent crimes involving weapons in his past, is sufficient to demonstrate that less restrictive conditions like electronic monitoring would not mitigate the harm Davis could pose if released. See *Stock*, 2023 IL App (1st) 231753, ¶ 18; see also *Johnson*, 2024 IL App (1st) 240154, ¶ 20 (firearm possession by a person unauthorized to do so is dangerous under any circumstances); *People v. Thomas*, 2024 IL App (4th) 240248, ¶¶ 26-27 ("Knowing that electronic monitoring

might *detect* a failure to comply with conditions of release does not diminish concerns that a particular defendant appears to present a greater risk of noncompliance, especially if the consequences of noncompliance may be grave." (Emphasis in original)). As such, the court's finding on less restrictive conditions here was reasonable and supported by the record, and we have no grounds to reverse it on appeal as against the manifest weight of the evidence. See *Castillo*, 2024 IL App (1st) 232315, ¶ 17 ("A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.").

¶ 44   Davis argues that the circuit court's finding on this issue was deficient because the court only referenced the details of his charges as support, in violation of the principles outlined in *Stock*, 2023 IL App (1st) 231753, ¶¶ 17-22 (explaining why "the bare allegations that defendant has committed a violent offense" are insufficient for the less restrictive conditions finding, and the court must find on the record sufficient factual bases). This argument fails for two reasons. First, while the court may have prefaced its findings inappropriately in the December 1 hearing and order, as only pertaining to flight risk, there is no question that the court directly stated on the record that pretrial detention was necessary not just due to the nature of the charged offense, but also his violent criminal history and that he might face a natural life sentence if convicted, which, combined, constitute sufficient grounds for the finding that no less restrictive conditions could mitigate the risk he posed. Second, even if we agreed that the court violated the *Stock* guidance on record clarity requirements, Davis would not be entitled to any relief for this violation because the court later clarified the record, as we explain below.

¶ 45   Finally, Davis argues that the circuit court erred by finding at the December 1 hearing that he posed a flight risk because, even though the State proffered that he and his co-defendant

16

attempted to flee the scene in a vehicle, Davis was not the driver and did not attempt to escape on foot, and the State did not proffer anything regarding previous escape charges or failure to appear. This argument fails because the record is clear that the court believed the severity of the penalty Davis faced—a possible life sentence—also indicated he posed a flight risk, along with the post-offense conduct of attempting to flee. And while the State's initial proffer did not mention the Minnesota bench warrant, it did describe the conduct of attempting to escape from the scene of his crime, in which the court could reasonably conclude he was actively engaged even if he did not personally drive the vehicle. This conduct, along with severity of his potential sentence, combined to make the court's conclusion that Davis posed a flight risk reasonable, and thus not subject to reversal. *Castillo*, 2024 IL App (1st) 232315, ¶ 17.

¶ 46    Moreover, any argument Davis raises regarding the State's failure to proffer facts about failures to appear in court at the December 1, 2023 hearing are negated by the State's proffer at the July 3, 2024 hearing on his Minnesota bench warrant. This proffer strengthened the reasonability of the court's ultimate conclusion that continued detention was necessary to guard against the flight risk Davis posed, and functionally means Davis would not be entitled to relief on this challenge even if we were inclined to find the State's December 1, 2023 proffer on flight risk was insufficient because it did not demonstrate Davis had failures to appear in his record.

¶ 47    Moving to the claimed errors at the July 3, 2024 continued detention hearing, Davis first contends that his release did not pose a real and present threat according to the specific, articulable facts of the case because his conduct at the time of arrest showed he was not dangerous—

specifically, he cooperated with officers, did not act violently or try to evade arrest, and was merely a passenger in the vehicle driven by his co-defendant.[2]

¶ 48   We reject this argument because it contains no new information from that proffered at the December 1, 2023 hearing, and thus makes no new, substantive impact on the calculus of whether Davis poses a real and present threat if released. See *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. The circuit court was clear after the December 1, 2023 hearing that the nature of the charged offense, including the allegation that Davis fired a gunshot at a victim, combined with his criminal history, caused the court to conclude Davis posed too great a threat for pretrial release. The repetition of his cooperation at the time of his arrest did nothing to alter these factors, and thus it was reasonable for the court to maintain its initial conclusion that detention was necessary, despite Davis reemphasizing these points at the July 3 hearing.

¶ 49   Davis next argues that continued detention was unnecessary because less restrictive conditions existed, specifically electronic monitoring, to mitigate the threat he posed. He makes procedural and substantive arguments regarding less restrictive conditions, both of which fail.

¶ 50   First, Davis challenges the finding on substance, pointing to the additional proffers made at the July 3 hearing. The record shows that his counsel argued electronic monitoring was appropriate because Davis had a place to live, no subsequent felony arrests following his parole in 2009, and worked as a barber and in construction. In response, the State updated its proffer on electronic monitoring, saying it would "not be enough" because Davis had shown a willingness to engage in violent conduct capable of completion before police officers would have time to respond. The

---

[2] In his notice in lieu, Davis raises the issue for the first time of whether the State has a burden of proof at the subsequent appearance regarding the continued detention finding, citing *People v. Thomas*, 2024 IL App (1st) 240479. Again, issues not first raised in a motion for relief are waived, and as such, we do not reach this argument. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

State also noted the Minnesota bench warrant. In his motion for relief, Davis argued the conditions of electronic monitoring could be altered to fit his situation, and the State did not offer specific evidence that Davis was likely to tamper with the monitoring equipment or otherwise ignore the circuit court's orders or conditions.

¶ 51   We find the circuit court could reasonably conclude that continued detention was necessary despite the potential for Davis to be placed on electronic monitoring. That Davis worked and had a place to live if released did not mean the court could not weigh other factors more heavily. Such factors included his flight risk, access to weapons, criminal history including violent crimes and a probation violation, an out-of-state bench warrant, and the fact that electronic monitoring would not restrict his movement sufficiently to prevent similar crimes in the future or protect the victims of the current offense. There were factors both for and against the court's decision, meaning either result could be reasonable, and reversal by this court in such a situation on abuse of discretion review is inappropriate. See *Castillo*, 2024 IL App (1st) 232315, ¶ 18 ("An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court.").

¶ 52   Davis's procedural claim against the less restrictive conditions finding at the continued detention hearing is that the circuit court again did not create a sufficient record per *Stock*, as it only repeated the underlying allegations against him. This argument fails because, as explained above, we find the court made sufficient findings on the record to satisfy the statutory requirements at the December 1, 2023 hearing. The July 3 hearing was a subsequent appearance, at which the court's task is different—it only needed to make a finding that continued detention was necessary, based on the specific, articulable facts of the case, and the Act did not require it to make new

factual findings on the issues at stake in an initial pretrial detention hearing, including less restrictive conditions. *Thomas*, 2024 IL App (1st) 240479, ¶ 14.

¶ 53    Additionally, even if we agreed with his criticisms on the lack of specificity at either or both of the hearings at issue, we find the court cured any such issues by making a clear record at the August 13, 2024 hearing on the motion for relief. At that hearing, in response to direct criticism from his counsel that the court had not created a sufficient record on less restrictive conditions, the court responded, "The case is one involving extreme violence," and Davis "has prior Class X felonies. This could potentially be a mandatory natural life case. The two victims in this case need to be protected from the possibility of the defendant while out on pretrial release in some capacity, electronic monitoring, and who's to say he won't flee again?" The court then noted the Minnesota bench warrant, and stated those factors combined to demonstrate Davis was someone that "poses an extreme risk to society, to the community, to the victims and poses a flight risk." The remedy for a *Stock* violation regarding record clarity is to remand so that the lower court can clarify on the record the bases for its findings. *Stock*, 2023 IL App (1st) 231753, ¶ 22; *Castillo*, 2024 IL App (1st) 232315, ¶ 34. The record here demonstrates such a remedy is unnecessary and would be a waste of judicial resources, as the circuit court corrected any arguable issues with the clarity of the record by explaining the bases for its decision at the hearing on the motion for review.

¶ 54                                    CONCLUSION

¶ 55    For the reasons stated above, the circuit court's orders of December 1, 2023, and July 3, 2024, are affirmed.

¶ 56    Affirmed.