2025 IL App (1st) 251300-U

FOURTH DIVISION
Order filed: October 27, 2025

No. 1-25-1300B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25 CR 02532 |
| | ) | |
| RICHARD MARIN, | ) | Honorable |
| | ) | Diana L. Kenworthy and Sabra |
| Defendant-Appellant. | ) | L. Ebersole, Judges, presiding. |

JUSTICE QUISH delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's order denying defendant pretrial release is affirmed, as the State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the threat posed by defendant.

¶ 2    The defendant, Richard Marin, appeals from the circuit court's orders of February 11, 2025, and May 21, 2025, denying him pretrial release pursuant to Section 110-6.1 of the Code of Criminal Procedure, commonly referred to as the Pretrial Fairness Act (Act) (725 ILCS 5/110-6.1 (West 2024)), and denying his motion for release. On appeal, defendant argues (1) his motion for

pretrial release filed in the circuit court was a motion for relief under Rule 604(h)(2) and (2) the State failed to meet its burden to prove that no condition or combination of conditions could be imposed to mitigate the safety risk defendant posed. For the following reasons, we affirm.

¶ 3 Defendant was arrested on February 10, 2025, and charged with violating a stalking no contact order and cyberstalking. On February 11, 2025, defendant appeared for a probable cause hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975). Prior to defendant's initial appearance, the State filed a petition for pretrial detention, asking that defendant be detained based on his violation of the stalking no contact order. 725 ILCS 5/110-6.1(a)(3) (West 2024).

¶ 4 The State proffered that defendant was served a stalking no contact order as a result of case 23 CR 023802, which was issued and served on defendant in open court on July 1, 2024, and expires on July 1, 2026. In the stalking no contact order, defendant was ordered to have no contact with the victim and ordered to "not post, publish or share [the victim's] personal information and or any images of" the victim or her family. The charges in 23 CR 023802 stemmed from defendant's violation of a prior civil stalking no contact order obtained by the same victim in 2022. In that case, defendant pled guilty to a reduced misdemeanor charge, served 364 days in jail, and, as part of his plea agreement, the court entered the stalking no contact order at issue in the present case.

¶ 5 The State alleged that defendant violated the stalking no contact order several times between July of 2024 and January of 2025. On July 11, 2024, defendant posted a Google Drive link to Twitter which contained the victim's full name. On September 18, 2024, defendant referenced the victim by a nickname in a conspiracy theory-related post on Twitter. On December 3, 2024, defendant posted another Google Drive link on Twitter, which referenced an individual

purportedly working with Jeffrey Epstein. The link contained files including a photograph of the victim, the victim's full name and court records and transcripts, including a grand jury transcript, from defendant's prior case involving the same victim.

¶ 6 On December 8, 2024, defendant made another post on Twitter that again referred to the victim by a nickname and referenced the victim and Jeffrey Epstein working together in a conspiracy theory. On December 18, 2024, defendant sent an email to the victim. On December 25, 2024, defendant sent another email to the victim. Each email was sent from an email address containing defendant's name and the email signature contained defendant's full name and phone number. Defendant admitted to the police that he sent both emails.

¶ 7 On January 6, 2025, defendant left a voicemail with the victim from the same phone number listed in his email signature. In the voicemail, defendant inquired about the emails he had sent her in December. The victim identified defendant's voice in the voicemail. In mid-January of 2025, the victim received a letter from defendant mailed to her home address. Defendant's name was on the envelope's return address.

¶ 8 The State proffered that defendant is the victim's friend's ex-husband. The victim knew defendant, but was not particularly close with him. She denied having any sort of prior relationship with defendant, despite his claims in social media posts that they grew up together and had a relationship. The victim experienced anxiety after receiving the emails from defendant and "struggles with this Defendant's contact most days."

¶ 9 Defendant admitted to police that he left a voicemail for the victim and sent emails to her. He asserted that his communications were non-threatening and "protected." Defendant told police that he was a journalist "trying to work in the balance of the law" and that he wanted to "work

with the police to show that the victim's statements were false." He claimed that the victim was involved in the Jeffrey Epstein case. He told police that he believed that as long as his contact was not threatening, this was "legal communication."

¶ 10    The circuit court made a finding of probable cause pursuant to *Gerstein*. The State proffered defendant's background, which included a 2023 conviction for violating a civil stalking no contact order involving the same victim, which was reduced to a misdemeanor from multiple felony stalking counts. The victim obtained the prior civil stalking no contact order in 2022 after defendant made multiple social media posts and videos about the victim in July of 2021, tagging her and asserting that they were in danger. Defendant was involuntarily hospitalized after the posts. After his hospitalization, he posted on many online platforms the victim's full name and stated they were secretly married, needed help and were in danger.  The victim's friends found his posts on various platforms that made clear that defendant "was obsessed with this victim in addition to being unwell."  The victim described the posts in her petition for a no contact order as "creepy."

¶ 11    The State proffered that, in 2022, defendant continued contacting the victim and making social media posts posting her name, photo and city and asserting that she was in danger, was being trafficked, and was being attacked as well as "awful things about the victim's family." According to the victim's petition for the civil stalking no contact order, defendant threatened the victim's friend and again was hospitalized. He then sent more messages to the victim and posted a three-hour video on YouTube claiming that the victim lived at a certain address and was being raped and was armed with intent to hurt a supposed attacker. The victim further alleged that defendant repeatedly said he loved her and "was begging people to call the police about" her and disclosed her full legal name, an address close to where she lived, her employer and her photo.  He stated he

planned to come to Chicago to "bring [the victim] home," and said, "Close time loop by killing ourselves."

¶ 12    The State argued that the proof was evident and the presumption great that defendant had committed a detention-eligible offense because defendant was served with a stalking no contact order in open court as a result of a prior conviction involving the same victim, and defendant repeatedly violated that order by contacting the victim and committing cyberstalking. The State argued that defendant posed a real and present threat to the safety of the victim because he had "an obsession" with her and would not leave her alone despite multiple court orders. The State asserted that no condition or combination of conditions would mitigate the risk posed by defendant because he demonstrated an unwillingness to abide by court orders and GPS monitoring only protected a finite number of addresses and would not protect the victim based on the defendant's actions.

¶ 13    Defense counsel argued that two of the alleged social media posts only refer to the victim by a nickname and not her full name, and there were no allegations of violence. Counsel argued that defendant did not pose a danger to the victim or the community at large, as he only had one conviction in his background. Counsel also asserted that defendant was a journalist, believed that his speech was protected by the First Amendment, and that he "could have been confused" about whether his communication was covered by the stalking no contact order. Counsel also argued that GPS or electronic monitoring would be sufficient to mitigate any risk posed by defendant.

¶ 14    The pretrial services report flagged defendant as a "yes" for "new violent criminal activity," a 3 out of 6 on the "new criminal activity scale," and a 2 out of 6 on the "failure to appear" scale. If released, pretrial services recommended maximum conditions.

¶ 15    The circuit court found that the State showed by clear and convincing evidence that the proof was evident or the presumption great that defendant committed an eligible offense of violating a stalking no contact order, as defendant was served with a no contact order, the victim made statements that he sent her emails and a voicemail, and defendant admitted to making those contacts to police. The court also found that defendant posed a real and present threat to the safety of the victim as he continued to "psychologically torture" the victim by continuing to contact her in violation of court orders. The court noted that defendant had already been convicted of violating a no contact order and "it has made absolutely no difference" as defendant continued contacting the victim. The court found that defendant's actions of posting personal information about the victim and her family online put the victim at "great risk."

¶ 16    The circuit court also found that no condition or combination of conditions could mitigate the real and present threat posed by defendant. The court noted that "[w]e have already been down this road," and defendant demonstrated an unwillingness to abide by prior court orders to not contact the victim that have been in place since 2022, yet he continued to contact and post about her. The court found that if defendant were not detained, there was nothing to stop him from continuing to contact the victim or posting about her and "making it appear as though she is somehow in need of police assistance when she is not, that puts people at great risk." The court observed that the pretrial services report flagged defendant as a "yes" for new violent criminal activity, which the court found concerning. In a written order, the circuit court ordered defendant to be detained.

¶ 17    On May 15, 2025, defendant filed a "Petition for Defendant's Pretrial Release," citing sections 5/110-1.5 and 5/110-2 of the Act. 725 ILCS 5/110-1.5 (West 2024); 725 ILCS 5/110-2

(West 2024). Defendant's petition noted that defendant had not missed a court date and had minimal prior criminal background. He also noted that, prior to his incarceration, he resided at A Safe Haven, had a job in a building associated with A Safe Haven and hoped to return to that job if released. Defendant argued that the court could fashion conditions through the Cook County Probation Department's Home Confinement Unit that allowed for release while keeping the community safe.

¶ 18    On May 21, 2025, the circuit court held a hearing on defendant's petition for release, which the court noted was "a motion for relief, essentially." Defense counsel reiterated the arguments in the petition, noted that defendant had never failed to appear, and argued that defendant could be placed on electronic monitoring, abide by conditions, and appear in court. The State argued that defendant's pretrial release was revoked for periods of time while his 2023 case was pending, which indicated there are no less restrictive conditions. The State also noted that defendant had demonstrated an unwillingness to comply with court orders, and that the victim was very fearful of defendant. The State argued that electronic monitoring or GPS would not prevent defendant from accessing the internet and posting about the victim and defendant was aware of her location. The State further noted that, in the prior case, defendant was arrested in proximity to the victim's address and on prior occasions, defendant contacted the police and informed them that the victim "may not be safe" which was part of his ongoing stalking of her. The State also noted that, while detained for this case, defendant sent a handwritten letter to the State's Attorney's office which referenced the victim by name several times, despite the stalking no contact order's prohibition on defendant discussing the victim.

¶ 19    The court denied defendant's petition, finding no error in the initial court's finding that the State showed by clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detention-eligible offense, he posed a real and present threat to the victim and that there are no conditions or combination of conditions that can mitigate this threat.  The court  observed that defendant was convicted of violating a no contact order related to this victim before and served 364 days in jail for that conviction. The court stated that the prior jail sentence "was not enough of a deterrent for this defendant," as he was alleged to have violated the second stalking no contact order ten days after being served in open court. The court noted that defendant had a "history of not following court orders."  The court found the fact that the pretrial services assessment flagged defendant for new violent criminal activity was "deeply disturbing and concerning" and noted that "it appears that [defendant] may have some mental health issues" based on the content of some of his social media posts. During this portion of the circuit court's oral ruling, defendant interjected to state that his behavior "is not an indication of mental illness." The court concluded that no conditions other than detention would keep defendant from contacting the victim, as a prior jail sentence and two court orders were not enough of a deterrent. The circuit court denied defendant's petition.

¶ 20    At the conclusion of the hearing, the following exchange occurred between the circuit court and defense counsel:

> [DEFENSE COUNSEL]: Thank you Judge.
> I believe it is my client's intention that he is going to appeal your ruling with regard to the –
> THE COURT: Absolutely.
> [DEFENSE COUNSEL]: But there's no time frame, I believe, anymore.
> THE COURT: There is not. This will proceed in the meantime.
> [DEFENSE COUNSEL]: Absolutely, Judge.

So I'm going to order that transcript and get that so I can file it. But I'm going to ask for July 8 so I can hopefully do the motion to reconsider – I forget what the term is.

THE COURT: The motion for relief is what you need to be able to appeal. So you can appeal.

[DEFENSE COUNSEL]: Yes, to do that. So I can just straight appeal now?

THE COURT: Yeah, exactly.

[DEFENSE COUNSEL]: Okay.

THE COURT: That's why they created this motion for relief. You're good to go.

This appeal follows.

¶ 21    Pretrial release is governed by the Act, which presumes that a defendant is entitled to pretrial release and that release may only be denied in certain limited situations. 725 ILCS 5/110-2(a); 725 ILCS 5/110-6.1 (West 2024). Upon the filing of a petition requesting the denial of defendant's pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, by conduct which may include a forcible felony;  and (3) no condition or combination of conditions of pretrial release set forth in Section 110-10(b) can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community, based on the specific articulable facts of the case, for certain offenses, or the defendant's willful flight. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024).

¶ 22    A trial court may order a defendant detained pending trial if it finds that the State has met its burden as to all three statutory requirements. *People v. Morgan*, 2025 IL 130626, ¶ 41. When the State presents evidence by proffer rather than by live testimony, as in this case, we review the circuit court's decision to detain the defendant *de novo*. *Id.* ¶ 54. We review the evidence proffered

by the State and any other documentary evidence with "no deference to the decision of the circuit court." *Id.* ¶ 22.

¶ 23    Defendant's first argument is that his petition for release should be considered as a motion for relief under Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), which is a prerequisite for an appeal, even though he failed to cite the rule or style his motion as a motion for relief. The State argues that defendant's petition failed to cite Rule 604(h)(2), failed to identify errors in the original detention hearing, and effectively sought review of his detention under the Act. See 725 ILCS 5/110-6.1(i-5) (West 2024) (requiring review of continued detention at each subsequent appearance).

¶ 24    Rule 604(h)(2) requires that a defendant file "a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. Sup. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). However, there is no requirement in Rule 604(h)(2) that the motion for relief cite the rule. Defendant's petition stated the relief he sought, pretrial release, and the grounds for such relief, that the court could fashion conditions of release to ensure his appearance and keep the community safe. Defendant seeks the same relief and raises the same argument on appeal.

¶ 25    Additionally, the record shows that the court considered defendant's petition to be a motion for relief under Rule 604(h)(2). The circuit court stated that defendant's petition was "a motion for relief, essentially" and that defendant was "good to go" to pursue this appeal without filing an additional motion for relief. The State did not object to this characterization. Given these circumstances, we find that defendant's petition for release was sufficient to comply with Rule 604(h)(2). See *People v. Opas*, 2025 IL App (1st) 250208, ¶ 1 (construing defendant's "motion for release" as a motion for relief under Rule 604(h)(2)); *People v. Hill*, 2025 IL App (4th) 250010, ¶

17 (finding the substance of defendant's motion satisfied the requirements of Rule 604(h) even though the motion did not specifically reference Rule 604(h) and was titled "Motion to Reconsider" rather than "Motion for Relief."). See also *People v. Raisbeck*, 2025 IL App (4th) 250518-U, ¶ 31; *People v. Brito*, 2025 IL App (1st) 250813-U, ¶ 21.

¶ 26 Addressing the merits of defendant's appeal, we first note that defendant does not challenge that the State met its burden to prove by clear and convincing evidence either of the first two statutory requirements: that the proof is evident or the presumption great that he committed a qualifying offense and that his pretrial release posed a real and present threat to the safety of any person or the community based on the specific, articulable facts of the case. Even if defendant did attempt to make such an argument, it would be waived because he failed to raise it in his motion for relief. Pursuant to Rule 604(h)(2), "[u]pon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. Sup. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Accordingly, defendant has waived any challenge related to the first two statutory requirements of section 110-6.1. See *People v. Davis*, 2024 IL App (1st) 241747, ¶ 38-39.

¶ 27 Defendant argues only that the State failed to meet its burden to show that no condition or combination of conditions are sufficient to mitigate any threat he poses. In determining which, if any, conditions of pretrial release will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of defendant's compliance with all the conditions of pretrial release, the Act requires the circuit court to consider such matters as: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness

of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024).

¶ 28    Here, the State presented evidence that defendant engaged in a course of conduct against the same victim since 2021 involving multiple social media posts and messages, emails, letters, and at least one voicemail sent to the victim. Defendant's efforts to contact the victim continued after a civil stalking no contact order issued in 2022 and even after his conviction and time in jail for violating that order.  A second stalking no contact order was issued after his conviction in the prior case pursuant to his plea agreement. This case involves allegations that defendant made eight different attempts to post about or contact the victim within a six-month period beginning only ten days after he was served with the second stalking no contact order. Defendant has previously been involuntarily hospitalized, yet his actions regarding the victim continued after his hospitalization. Further, he continued to violate the stalking no contact order by sending a letter to the State's Attorney referencing the victim even while detained in this case.

¶ 29    After considering the above-mentioned factors, we find that the State met its burden to show that no conditions would mitigate the real and present threat posed by defendant. The State presented evidence that defendant does not abide by any conditions imposed, including prior court orders.  A "defendant's release on conditions depends on the court having confidence that the defendant will *comply* with those conditions." *People v. Vincent*, 2024 IL App (4th) 240218, ¶ 61 (emphasis in original). The court has no such confidence here.

¶ 30    Conditions such as GPS or electronic monitoring will not prevent defendant from continuing to contact the victim, post about her or publicly assert that she is in danger. See *People v. Keough*, 2024 IL App (2d) 230400-U, ¶ 21 (applying manifest weight of the evidence standard, finding that defendant's actions of violating an order of protection three times, including calling victim to ask why she called the police, demonstrated that electronic monitoring would not deter defendant). Defendant has also demonstrated an inability or unwillingness to comply with court orders through his actions alleged in this case as well his prior conviction for violating a no contact order involving the same victim.

¶ 31    Defendant argues that the State failed to consider conditions such as mental health treatment or a ban on social media usage. We note that the State was not required to address every conceivable condition of release at the detention hearing. *People v. Mikolatis*, 2024 IL 130693, ¶ 20. According to the State's proffer, defendant had received inpatient mental health treatment in the past, yet continued to engage in similar conduct towards the victim after being released. A ban on social media usage would not prevent defendant from contacting the victim in other ways, including by email, telephone, or letter. We find that the State presented sufficient evidence to establish that these conditions would not mitigate the threat posed by defendant.

¶ 32    Defendant's reliance on *People v. Stock*, 2023 IL App (1st) 231753, is unconvincing. In *Stock*, the State made only a conclusory statement that no condition or combination of conditions could mitigate the threat posed by defendant, but did not offer any evidence in support. *Id.* ¶ 17. This court held that the State could not rely on its factual proffer about the allegations of the offense to support its burden of proof to show that no conditions or combinations are sufficient to mitigate the risk posed by defendant. *Id.* ¶¶ 18-19. In this case, unlike *Stock*, the State noted that defendant

demonstrated an inability or unwillingness to abide by court orders over several years and explained why conditions such as GPS tracking would not mitigate the risk posed by defendant. While the defendant's violation of a court order is an element of one of his charges, his pattern of violating court orders beyond this case is a relevant consideration in determining whether he would abide by any conditions of release.

¶ 33     We find that the State met its burden by clear and convincing evidence to show that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 34     Therefore, we affirm the circuit court's orders of February 10, 2025, and May 21, 2025, denying defendant pretrial release.

¶ 35     Affirmed.