2024 IL App (2d) 240168
No. 2-24-0168
Opinion filed June 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2481 |
| DUKA M. SMITH, | ) ) | Honorable M. Lark Cowart, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Jorgensen and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Duka M. Smith appeals from the circuit court's order detaining him prior to trial on charges of armed violence and attempted first degree murder. He contends that the court erred by accepting the State's proffered evidence and by rejecting his proffered evidence that his use of deadly force may have been justified in defense of another. He asks us, prior to a trial, to essentially force the circuit court to accept the defense's version of events leading up to the stabbing he is charged with committing and to conclude that defendant is not so dangerous as to deny him pretrial release, because the stabbing might have been in defense of another. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 We repeat our observation that all of the information is preliminary at this point. We also note that several exhibits and documents, which were before the circuit court judge, are missing from the record on appeal; these are omissions that easily could have been corrected by either party. Nevertheless, while we have determined that the record is sufficient for our review, we note what information appears to be missing.

¶ 4 Following a stabbing incident, on November 15, 2023, the State charged defendant with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a) (West 2022)), armed violence (*id.* § 33A-2(a)), and aggravated battery (*id.* § 12-3.05(a)). Despite a warrant being issued on that date, defendant was not arrested until February 23, 2024. The State filed a petition to detain defendant as a danger to the community (725 ILCS 5/110-6.1(a) (West 2022)), and the circuit court heard the petition and granted it.

¶ 5 At the hearing on the State's petition, the parties presented the following. According to a police synopsis, on November 12, 2023, around 9 p.m., Aurora police responded to a call that a person had been stabbed near a small strip mall on Root Street. There, officers found the victim, Roderick Rodgers, who had been stabbed multiple times with wounds "to his head, face, chest, abdomen, arm, and hand." Paramedics took Rodgers to the hospital where he underwent emergency surgery.

¶ 6 Meanwhile, at the scene, police located a blood trail that led from the scene to an apartment about two blocks away. Officers spoke to a resident named Jarri Hatten. Hatten explained that Rodgers was having a disagreement with a woman who had been at his apartment. "During the disagreement another male became involved and began to get physical with Rodgers." Hatten identified defendant as the man who stabbed Rodgers.

¶ 7    Video footage, with audio, was also recovered from a business that showed Rodgers and defendant in the strip mall parking lot. The video was admitted into evidence at the hearing, and the circuit court judge's comments indicated that she had viewed it, but the video was not included in the record. Nevertheless, according to the responding officer's synopsis, on the video:

> "Rodgers is seen falling down on the ground in the parking lot. While Rodgers is on the ground Smith gets on top of him. Rodgers can be heard screaming. A female is yelling[,] [']Duka stop.[']
>
> Smith stopped stabbing Rodgers and got off of him. Rodgers then fled from the scene ***."

The responding officer also interviewed Rodgers two days later at a hospital. Rodgers was unable to identify defendant, and the police did not apprehend defendant until several months later.

¶ 8    The State proffered defendant's criminal history. The cover page of a pretrial services report was included as a supplement to the record on appeal, but it does not reveal any information about defendant's criminal history. The State's verified petition to deny defendant pretrial release is also missing from the record. However, no issue has been raised as to the veracity of the State's proffer, so we can accept the prosecutor's statements made at the hearing.

¶ 9    According to the State, defendant is currently on pretrial release from a separate felony case of aggravated fleeing and eluding (No. 23-CF-2158). Defendant stopped appearing for court on that case, and a warrant was issued for his arrest. In a 1994 case, defendant was convicted of "a Class 1 drug offense." In a case from 1999, defendant was convicted of "Class 4" unlawful possession of a controlled substance. Then, in a 2002 case, defendant was convicted "on a Class 2 drug offense." From a 2007 case, defendant was convicted of unlawful possession of a weapon by a felon and sentenced to 42 months' imprisonment. In 2015, defendant was convicted in Kendall

County of obstruction of justice. Once again, we note that details regarding defendant's convictions and sentences are *not* included in the record beyond what we have stated. The prosecutor then detailed the facts of this case, including the observation that it appeared Rodgers was unarmed and that defendant stabbed Rodgers *multiple* times. The State characterized the incident as a "brutal attack," wherein defendant took Rodgers "to the ground[,] *** stood over him[,] and repeatedly stabbed him." Thus, the State argued that defendant was a violent danger to the community and that no conditions of release would mitigate that danger.

¶ 10    According to the defense, defendant is in poor physical condition. He has six herniated disks and suffers from anxiety. His family relies upon him for financial support, and his attorney maintained that he "was not informed of the underlying charge for the warrant" in his pending felony fleeing-and-eluding case. But counsel also acknowledged that the warrant had been previously discussed in open court and that defendant was in the midst of preparations to turn himself in. In addition, counsel referred to a second police report, which, curiously, counsel never sought to admit. Instead, counsel proffered that, according to the report, Hatten (the resident in the apartment at the end of the blood trail) spoke to a different officer the day after the stabbing:

> "And on that date, [Hatten] told the police officers that there was another individual involved. That the disagreement between Mr. Rodgers and this female was not just a disagreement but was a physical altercation wherein Mr. Rod[gers] shoved the female's head toward the wall causing her to hit her head on a nail. And that he, when she fell, picked her up by her neck. And that after that altercation, there was another individual that [Hatten] knows as, quote, Godfather who began to punch Mr. Rod[gers].
>
> [Hatten] also tells the police that the physical altercation moved outside into the parking lot. And that while he did see a knife being waved, he never saw anyone stab Mr.

Rod[gers]. He said that he took the female inside the residence when the alleged stabbing was to have taken place."

Despite having previously said that Hatten made the statement the next day, counsel then sought to bolster this second version of Hatten's account, stating, "[t]his is *immediately* after the incident that he is telling this to [the officer]." (Emphasis added.) We merely note the discrepancy. The report also mentioned that another witness saw "both men flailing their arms" when defendant and Rodgers were "engaging in that physical altercation."

¶ 11    Counsel then stated that, according to the second report, while reviewing the video, the officer was not able to see a knife in defendant's hand and the video supposedly "skips." Based on Hatten's inconsistent statements, counsel urged the court to adopt the second version of Hatten's statement exclusively, stating, "[W]e *** have a situation where the complaining witness *** just slammed a female's head into a sharp nail and then picked her up by her neck off the ground. That would indicate a defense of other[s]." Counsel also intimated that Rodgers might have sustained injuries when fighting with defendant for control of the knife, which counsel argued would have been self-defense from defendant's viewpoint.

¶ 12    After the parties' arguments, the circuit court made a thorough record of its oral findings regarding defendant's criminal history and the charged offenses. The court found that the proof was evident or the presumption great that defendant committed a detainable offense, that he posed a real and present threat to the victim and the community, and that no pretrial release conditions could remediate that threat. With respect to defendant's nascent defense-of-others claim, the court noted that greater evidence supported the State's version of events:

"There has been no contrary evidence offered to me that Mr. Rodgers was not stabbed. I do not find the fact that the knife itself couldn't be seen on the video to be very convincing.

I do note the State's argument that the violence of what occurred does show an intent to cause death or great bodily harm. [The victim] was stabbed multiple times in the head, face, neck, chest, abdomen, arm, hand, and in the eye. It is fortunate he is not dead. I do believe that stabbing someone with a knife that many times in those locations does demonstrate by clear and convincing evidence an attempt to pose death or great bodily harm.

\*\*\*

\*\*\* Even if true that Mr. Rodgers had been in an altercation with this female prior to what happened, if your response is to grab a knife and try to kill somebody, that is, in the Court's opinion, a threat not only to this victim but also to the community."

¶ 13    When addressing pretrial release conditions, the court stated:

"Turning to the question of conditions that could mitigate. The Court finds it very significant that just a month before this you were before a judge who ordered your release. And one of the most basic things that you were ordered was not to commit any criminal offenses. And the offenses that you are charged with today are some of the most serious criminal offenses. So given that there's already been a disregard for the court order in that way, I do not find that there are conditions that could ameliorate the risk."

¶ 14    Defendant filed a notice of appeal, and the appellate defender was appointed to represent him. Both the appellate defender and the State have filed supplemental memoranda.

¶ 15                                   II. ANALYSIS

¶ 16    Pretrial release is governed by article 110 of the Code of Criminal Procedure (Code) (725 ILCS 5/art. 110 (West 2022)). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id.* § 110-2(a). At the hearing, the State bears the burden of proving by clear and convincing evidence that (1) the defendant committed a detainable offense listed in the statute; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and no condition or combination of conditions can mitigate the real and present threat or the defendant's willful flight *Id.* § 110-6.1(e).

¶ 17    As noted, defendant challenges each of the circuit court's three findings under the Code. Specifically, he argues that there was insufficient evidence that he had committed a detainable offense; that he is not dangerous generally and no longer dangerous to Rodgers specifically; and that the circuit court failed to sufficiently analyze possible release conditions, including home monitoring. According to defendant, *if* his use of deadly force was ultimately found to have been reasonable and justified, no crime would have been committed, and he would neither be dangerous nor undeserving of pretrial release. See 720 ILCS 5/7-1 (West 2022). That is a large "if" however, one far beyond the scope of the circuit court's considerations at a pretrial release hearing.

¶ 18    We apply a two-part standard of review to a circuit court's decision to detain a defendant. We apply the manifest-weight-of-the-evidence standard to the court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat, and whether any conditions would mitigate that threat. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if the evidence supports the opposite conclusion. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is

reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52. That was not the case here.

¶ 19    The evidence is largely undisputed and by asserting self-defense, or defense of others, defendant necessarily concedes that he committed the acts with which he has been charged. Such a claim "presupposes that the accused committed the act and invokes the defense as a justification." (Internal quotation marks omitted.) *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 59. While there were inconsistent accounts from one witness, defendant's act of standing over Rodgers and stabbing him was recorded on video. Curiously, there is no mention of the female appearing in the video at all—the woman who defendant reasonably felt was in such imminent danger that deadly force was required.

¶ 20    Defendant's arguments cannot prevail in light of our standard of review. Under the manifest-weight standard, " '[a] reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn.' " *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361, ¶ 25 (quoting *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006)). It was the province of the circuit court to determine whether there was sufficient evidence of the crime, defendant's dangerousness, and the viability of his release. The question before us is not whether the evidence might support a *different* theory of the offense; rather, it is whether there was sufficient evidence to support the circuit court's findings so long as they were not unreasonable. See *People v. Pintos*, 133 Ill. 2d 286, 291 (1989) (explaining, "the reasonable hypothesis of innocence standard of review is no longer viable in Illinois").

¶ 21    Here, none of the circuit court's findings on the evidence, or the inferences it drew from that evidence, were unreasonable. The circuit court correctly concluded that there was sufficient

evidence defendant had committed a detainable offense, that he was a real and present threat to the victim and the community, and that, in light of his criminal history and other pending charges, no conditions were appropriate for his release. In Illinois, the question of whether a defendant's use of force was *ultimately* justified is a matter resolved at *trial*, for "it is the responsibility of the trier of fact to fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (Internal quotation marks omitted.) *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009); *cf.* 1 Jens D. Ohlin, Wharton's Criminal Law § 14:7 (16th ed. Sept. 2023 Update). A claim of justification is, of course, relevant at a pretrial release hearing, but merely because a defendant *might* raise a defense at trial is *not* dispositive of pretrial release concerns.

¶ 22   Similarly, defendant's reliance on the presumption of innocence is misplaced. The State may "permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt," and the "confinement of such persons pending trial is a legitimate means of furthering th[e] [State's] interest." *Bell v. Wolfish*, 441 U.S. 520, 534 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), and *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). Consequently, the presumption of innocence, a presumption that remains intact until a judgment of conviction, has "no application to a determination of the rights of a pretrial detainee *** before his trial has even begun." *Id.* at 533; *People v. Presley*, 2023 IL App (5th) 230970, ¶ 39. In our view, the circuit court correctly rejected defendant's attempt to put the cart before the horse. Defendant's emerging claim of justification and the presumption of innocence simply do not negate judicial findings that there is sufficient evidence to detain him prior to trial.

¶ 23   Defendant further suggests that the circuit court failed to make a written finding summarizing the reasons for denying pretrial release, including why less restrictive conditions

would not avoid a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(h)(1) (West 2022). This argument is forfeited because defendant failed to identify the issue in his notice of appeal; but more importantly, it is without merit. Defendant fails to note our holding that we construe the written judgment alongside a copy of the court's findings in the verbatim transcript. See *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19. As noted above (*supra* ¶ 13), the circuit court determined that, based on defendant's criminal history (while nonviolent) as well as his pending fleeing-and-eluding case, defendant was unlikely to comply with any judicial conditions for release. We cannot disagree. Furthermore, we are compelled to once again point out that more detailed evidence from pretrial services regarding defendant's criminal history was not included in the record on appeal. At any rate, based on our holding in *Andino-Acosta*, the circuit court's oral findings were sufficient proof of a judicial determination that no conditions would mitigate the real and present threat defendant poses.

¶ 24                                         III. CONCLUSION

¶ 25      In closing, we remind the parties that information and evidence that is before the circuit court judge ought to be carefully preserved so that the parties (namely, the appellant) can present them to us for our review. This responsibility falls on all officers of the court and is essential to the orderly administration of justice. Nevertheless, for the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 26      Affirmed.

---

### *People v. Smith*, 2024 IL App (2d) 240168

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 23-CF-2481; the Hon. M. Lark Cowart, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Bryon M. Reina, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |

---