2025 IL App (1st) 250813-U
Order filed: July 31, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-25-0813B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24CR0259701 |
| | ) | |
| SISTO ANTHONY BRITO, | ) | Honorable |
| | ) | John Terry Gallagher, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court's orders denying the defendant pretrial release are affirmed. The State's proffer established by clear and convincing evidence that (1) the presumption was great and the proof was evident that the defendant committed the detainable offenses of first degree murder and attempted first degree murder, and (2) no condition or combination of conditions would mitigate the real and present threat posed by the defendant.

¶ 2    The defendant, Sisto Anthony Brito, appeals from the circuit court's orders of February 20, 2024, and April 9, 2025, denying him pretrial release pursuant to Public Act 101-652, §10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today

(SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023), and denying his motion for pretrial release. For the reasons which follow, we affirm.

¶ 3     The defendant was arrested on February 19, 2024, and charged by information with one count of first degree murder and two counts of attempted first degree murder. On February 20, 2024, the defendant appeared for a probable cause hearing pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975), before the Honorable Linzey D. Jones. The State filed a petition for a pretrial detention hearing prior to the defendant's initial appearance.

¶ 4     The State's proffer pursuant to *Gerstein* was adopted as its proffer for the petition for pretrial detention. The proffer stated that the three victims and one witness (referred to separately as Victim 1, Victim 2, Victim 3, and Witness 1) were all acquaintances and arrived at the All Star Bar in McCook, Illinois at approximately 1:41 a.m. on February 17, 2024. Victim 2 knew the defendant from previous social interactions. The defendant separately arrived at the bar driving a red Tesla, which he had rented from Hertz to complete rideshare and delivery services.

¶ 5     Video surveillance from the All Star Bar and an industrial building across the street from the bar captured the events at issue. The defendant drove into the parking lot of the bar, pulling in front of the victims as they exited their vehicle and walked towards the bar. Victim 2 became upset at the defendant's driving and began to argue with the defendant. The defendant indicated that he was armed, but the argument continued. Eventually, Victim 2 struck the defendant with a closed fist. The defendant jumped back, but Victim 1 and Victim 3 got involved, and all three victims began striking the defendant. Witness 1 stepped back from the altercation and did not participate. The defendant fell to the ground and the three victims kicked at the defendant on the ground.

¶ 6     The victims eventually stopped striking the defendant and walked back towards their vehicle. The defendant got up to his feet and walked to his vehicle. The defendant entered his

vehicle, drove it around the parking lot, and veered in the direction of the victims. The defendant rolled down the driver's side window and pointed a firearm at Witness 1, before turning it towards the victims and firing multiple rounds in their direction.

¶ 7    Victims 1 and 2 fled southbound on Joliet Avenue toward Joliet Road. Victim 3 fled northbound towards 47th Street. The defendant exited his vehicle and fired towards Victim 3, then re-entered his vehicle. Victim 3 was not struck by the defendant's gunfire and continued fleeing northbound. The defendant then chased Victims 1 and 2 in his vehicle southbound on Joliet Avenue. The defendant shot Victim 2, who fell at the northwest corner of the intersection of Joliet Avenue and Joliet Road. The defendant then drove the Tesla directly at Victim 2. When the Tesla was located by police, it contained a smear of blood on the lower part of the passenger's side door, the same area of the car that passed near Victim 2. Victim 2 was transported to Loyola Hospital in critical condition with multiple gunshot wounds, but ultimately survived.

¶ 8    Victim 1 turned northbound to flee back towards 47th Street. The defendant drove onto Joliet Road and through a parking lot to intercept Victim 1. Victim 1 attempted to turn southbound but was backed up against a fence facing the defendant. The defendant fired multiple times at Victim 1, killing him.

¶ 9    Footage from multiple traffic cameras observed the Tesla driving away from the scene, and multiple license plate readers captured the Tesla's license plate number. Police located the Telsa at a residence in Chicago, and recovered a magazine with live rounds from the vehicle which matched bullet casings recovered from the scene. The Tesla also contained documents from Uber and a DoorDash contract bearing the defendant's name. As police were leaving the residence, the defendant arrived to speak to the owner of the residence and apologize for the police presence, and referred to turning himself in.

¶ 10    Victim 2 was interviewed by police and named the defendant as the individual who shot him. Victim 2 identified the defendant in a photo from Facebook and a photo he was shown during a video recorded interview.

¶ 11    The State argued that the proof was evident and the presumption was great that the defendant committed the first degree murder of Victim 1, and the attempted first degree murder of Victims 2 and 3. The State asserted that the defendant posed a threat to the surviving victims and the community at large based on the severity and unreasonableness of his actions. The State argued that there was no condition or combination of conditions that could mitigate that threat, as electronic monitoring could only monitor such conduct after the fact.

¶ 12    In mitigation, defense counsel emphasized that the defendant had no criminal history, no gang affiliation, and was employed at the time with three young children. Defense counsel argued that the defendant was attacked by the three victims, and the State's proffer did not establish that the defendant committed first degree murder as the defendant had a viable claim that he acted in self-defense. Defense counsel asserted that the defendant considered turning himself in and did not flee, and stated that electronic monitoring with GPS notifications could ensure that the defendant appeared in court and that the community was protected. Defense counsel asked that the defendant be detained under "strict conditions".

¶ 13    The circuit court observed that the defendant was initially in a defensive posture, but the defendant's actions after the victims walked away from the initial altercation demonstrated that he was the aggressor. The circuit court found that the State established by clear and convincing evidence that the proof was evident and the presumption was great that the defendant committed first degree murder and attempted first degree murder. The court found that the State demonstrated by clear and convincing evidence that the defendant posed a real and present threat to the victims

and the public at large based on his reaction to what happened to him, and because he used his vehicle as a weapon and chased down and shot at the victims in a public space. The court also found that the State demonstrated by clear and convincing evidence that there was no condition or combination of conditions that could mitigate against the threat posed by the defendant, as the defendant could violate electronic home monitoring and would not be monitored on some days. The court found that the defendant's actions demonstrated that he needed to be monitored on a constant basis. The circuit court granted the petition for pretrial detention, and ordered the defendant to be taken into the custody of the Cook County Sheriff.

¶ 14    The circuit court entered a written order on February 20, 2024, finding that the State had shown by clear and convincing evidence that: the proof was evident or the presumption great that the defendant had committed an eligible offense as listed in 725 ILCS 5/110-6.1(a)(1)-(7) (West 2024); the defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts in this case; and that no conditions or combination of conditions of pretrial release could mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community. In support of those findings, the court found that eyewitnesses observed the defendant chasing the victims in his car and firing multiple rounds, that these actions posed a threat to the two surviving victims and the community, and that electronic home monitoring or home confinement would not provide the court with enough assurances to protect the surviving victims and the public.

¶ 15    On March 14, 2024, the defendant was charged by indictment with eight counts of first degree murder, seven counts of attempted first degree murder, one count of aggravated battery based on the discharge of a firearm, and two counts of aggravated discharge of a firearm. The

defendant was arraigned on March 25, 2024, and the matter was transferred to the courtroom of the Honorable John Terry Gallagher.

¶ 16    On April 4, 2025, the defendant filed a "motion for pretrial release". The motion argued that the video evidence tendered by the State suggested that the defendant was brutally attacked by the victims and that the defendant acted in self-defense, or alternatively that the State's proffer only established that the defendant was guilty of second degree murder based on serious provocation. The motion noted that all three victims had a criminal record, and the video tendered in discovery appeared to show the individuals walking towards the defendant's vehicle after the initial fight. The motion argued that the defendant could be placed on electronic monitoring, "24-7 home confinement", and ordered to avoid certain geographic areas, which would mitigate any threat posed by the defendant.

¶ 17    On April 9, 2025, the circuit court held a hearing on the defendant's motion. Defense counsel reiterated the arguments from the motion, that the defendant had a viable self-defense claim and the State could not establish first degree murder, and that 24-hour a day, 7-day a week electronic monitoring would prevent any threat posed by the defendant. The State responded that the fight had ended and all parties had walked away before the defendant "reinitiates the fight" and started shooting at the victims, chasing them down as they ran away. The State argued that the defendant was engaged in revenge or retaliation rather than self-defense.

¶ 18    The circuit court found that "[i]f the State's proffer is accurate, it appears to the court that the claim of self-defense would be weak." The court found that there was clear and convincing evidence that the defendant committed first degree murder, that the defendant presented a real and present threat to the victims and the community at large, and that no conditions or combination of

conditions would mitigate the real and present threat posed by the defendant. The circuit court ordered that the defendant remain detained before trial.

¶ 19    On April 29, 2025, the defendant filed a notice of appeal listing the circuit court's orders of February 20, 2024, and April 9, 2025. This appeal follows.

¶ 20    In considering this appeal, this court has reviewed the following documents which have been submitted pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024):

-    Defendant's Notice of Pretrial Fairness Act Appeal,

-    Defendant's supporting record, including his Motion for Pretrial Release,

-    The report of proceedings on February 20, 2024, and April 9, 2025, and

-    The State's written response to the defendant's appeal.

¶ 21    The defendant has not filed the optional memorandum with this court. His "Motion for Pretrial Release" was not explicitly labelled as a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), which is a prerequisite to an appeal. However, the defendant's notice of appeal refers to the circuit court's order of April 9, 2025, as the order on his motion for relief, and refers to Judge Gallagher as "the judge who entered the order on the motion for relief under Rule 604(h)(2)". Therefore, we interpret the defendant's "motion for pretrial release" filed on April 4, 2025, as his motion for relief under Rule 604(h)(2), and consider the issues raised in that motion in this appeal. See Ill. Sup. Ct. R. 604(h)(7) (eff. Apr. 15, 2024); *People v. Opas*, 2025 IL App (1st) 250208, ¶¶ 1, 28 (construing a defendant's "motion for release" filed after the defendant was ordered detained as a motion for relief under Rule 604(h)(2), and reviewing the arguments in that motion on appeal).

¶ 22    The defendant argues that (1) the evidence set forth in the State's proffer shows that he acted in self-defense, or alternatively under serious provocation, and therefore the State failed to

show by clear and convincing evidence that he committed the offenses of first degree murder and attempted first degree murder, and (2) there are sufficient conditions of release, including "24/7 home confinement" or electronic monitoring without any free movement, to mitigate any threat posed by the defendant.

¶ 23 Pretrial release is governed by the Act, which presumes that a defendant is entitled to pretrial release, and that release may only be denied in certain limited situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). Upon the filing of a petition requesting an order denying the defendant's pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community and/or that the defendant's pretrial detention is necessary to prevent the defendant's willful flight to avoid prosecution; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community. 725 ILCS 5/110- 6.1(e)(1)-(3) (West 2024).

¶ 24 A trial court may order a defendant detained pending trial if it finds that the State has met its burden as to all three propositions. *People v. Morgan*, 2025 IL 130626, ¶ 41. When the State presents evidence by proffer rather than by live testimony, we review the circuit court's decision to detain the defendant *de novo*. *Id.* ¶ 54. We review the evidence proffered by the State and any other documentary evidence with "no deference to the decision of the circuit court". *Id.* ¶ 22.

¶ 25 We first address the defendant's contention that the State failed to show by clear and convincing evidence that the proof is evident and the presumption great that he committed a detainable offense. The charged offenses of first degree murder and attempted first degree murder are detainable offenses. 725 ILCS 5/110-6.1(a)(1.5), (7) (West 2024). The State's proffer showed

that the defendant chased the victims down in his vehicle and fired at them multiple times, striking Victim 2 and killing Victim 1. Victim 2 identified the defendant as the shooter by name and in two photographs. The incident was captured on surveillance video showing the defendant and his vehicle. The vehicle was rented by the defendant and contained documents with the defendant's name on it, and a magazine which matched bullet fragments from the scene was recovered from the vehicle. We find that the proffered evidence was sufficient to establish by clear and convincing evidence that proof was evident and the presumption was great that the defendant committed the offenses of first degree murder and attempted first degree murder.

¶ 26    The defendant argues that the State's proffer suggests that he acted in self-defense after the victims attacked him, and, therefore, the State failed to prove by clear and convincing evidence that he committed either first degree murder or attempted first degree murder. However, according to the State's proffer, the victims were walking away from the initial altercation when the defendant drove up to the victims and opened fire. The defendant then chased down Victims 1 and 2 in his vehicle as they attempted to flee and shot at them, killing Victim 1 and seriously injuring Victim 2. Given that, after the initial altercation, the defendant allegedly chased the victims and shot at them repeatedly as they fled, the proffered evidence does not suggest that the defendant acted in self-defense. See *People v. Ellis*, 187 Ill. App. 3d 295, 302-03 (1989) (State disproved self-defense beyond a reasonable doubt when the victim left an initial altercation and went home, then the defendant retrieved a baseball bat and chased the unarmed victim for two blocks before beating him with the bat). Additionally, even if the defendant has a viable self-defense argument at trial, the State is required to disprove that defense at trial, not during a pretrial detention hearing. *People v. Smith*, 2024 IL App (2d) 240168, ¶ 31.

¶ 27 The defendant alternatively argues that the proffered evidence only proved that he committed second degree murder, as he asserts that he acted under serious provocation from the initial altercation. 720 ILCS 5/9-2(a)(1) (West 2024). For a second degree murder charge, the State is not required to disprove that a statutory mitigating factor is present, rather the defendant bears the burden at trial to show that one of the mitigating factors was present by a preponderance of the evidence. 720 ILCS 5/9-2(c) (West 2024); *People v. Guy*, 2025 IL 129967, ¶¶ 41-42. We decline to find that the State failed to meet its burden to show that a detainable offense occurred based on a possibility that the defendant could meet his burden for a reduced charge at trial, particularly given that second degree murder is itself a detainable offense. 725 ILCS 5/110-6.1(a)(1.5); see *Smith*, 2024 IL App (2d) 240168, ¶ 31.

¶ 28 We next address the defendant's contention that the State failed to show by clear and convincing evidence that no condition or combination of conditions of release is sufficient to mitigate the threat he poses to the surviving victims and the community. In determining which, if any, conditions to impose, the circuit court shall consider (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the real and present threat to the safety of any person or persons in the community. 725 ILCS 5/110-5(a)(1)-(4) (West 2024).

¶ 29 The defendant argues that strict conditions, including "24-7 home confinement without the attendant two days of free movement", would mitigate any threat he poses. However, the two days of movement set forth in the home confinement statute is mandatory. See 730 ILCS 5/5-8A-4(A-1) (West 2024). ("At a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities"). Therefore, the circuit court was prohibited from

imposing any condition that required "24-7 home confinement" without any movement, as requested by the defendant. See *People v. Brito*, 2025 IL App (1st) 242601-U, ¶ 50 (rejecting a similar argument that the defendant could have been placed on electronic home monitoring with "no movement").

¶ 30     We agree with the circuit court that electronic home monitoring would not mitigate the threat posed by the defendant to the surviving victims, the remaining witnesses, and the community. The defendant is alleged to have chased down the victims in his vehicle and fired at them multiple times while they fled. The defendant also used his vehicle as a weapon, driving it at the victims. The defendant's response to the initial altercation was extreme and disproportionate to the situation, and demonstrated a propensity for violence and a lack of impulse control. This threat cannot be effectively mitigated by electronic home monitoring, which requires that the defendant be allowed two days of movement for basic activities and is "reactive and permissive" in nature. *People v. Badie*, 2025 IL App (3d) 250033, ¶ 31. We agree with the circuit court that no conditions of pretrial release would mitigate the threat posed by the defendant. See *People v. Martinez*, 2025 IL App (1st) 250298-U, ¶ 38 (finding that electronic monitoring or home confinement would not mitigate the threat posed by the defendant who, after an argument with a stranger, pursued them to their apartment building and fired into their apartment door); *People v. Davis*, 2025 IL App (1st) 242306-U, ¶ 69 (finding that no conditions would mitigate the threat posed when the defendant, who had no criminal background, fired multiple times at another vehicle while on a public highway, killing the other driver).

¶ 31     For the reasons stated above, we affirm the circuit court's order of February 20, 2024, ordering that the defendant be detained before trial, and its order of April 9, 2025, denying the defendant's motion for pretrial release.

¶ 32    Affirmed.