2026 IL App (1st) 252133-U

No. 1-25-2133B

Order filed January 22, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25-CR-0531701 |
| | ) | |
| JOSHUA WILLIAMS, | ) | Honorable |
| | ) | Thomas Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the order of the trial court continuing the defendant's pretrial detention.

¶ 2    Defendant Joshua Williams appeals from the circuit court's denial of his motion for relief

pursuant to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-1 *et seq.* (West

2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial

Fairness Act. In his motion for relief, Mr. Williams asserted that the trial court erred in ordering

his continued detention where he did not pose a real and present threat to the safety of any person

or persons or the community and that conditions placed on him would sufficiently mitigate any risk that he posed. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Mr. Williams was charged by indictment with 15 domestic violence-related offenses stemming from an altercation with his former girlfriend on March 9, 2024. Those offenses included one count of aggravated battery by strangulation (720 ILCS 5/12-3.05(a)(5) (West 2024)), five counts of aggravated battery causing bodily harm to the victim knowing the victim was pregnant (720 ILCS 5/12-3.05(d)(2) (West 2024)), four counts of domestic battery having previously been convicted of domestic battery in two other cases (720 ILCS 5/12-3.2(a)(2)(West 2024)), and four counts of domestic battery having previously been convicted of aggravated criminal sexual assault in one other case (720 ILCS 5/12-3.2(a)(1) (West 2024)).

¶ 5                            A. Initial Detention Hearing

¶ 6     On April 11, 2025, the State filed a petition for a pretrial detention hearing, alleging that Mr. Williams had a dating relationship with the victim. On March 9, 2024, Mr. Williams verbally and physically assaulted the victim, including grabbing her throat with both hands and applying pressure so that the victim could not breathe.

¶ 7     The court held a hearing on the State's petition on April 14, 2025. The State proffered that Mr. Williams and the victim had been dating for approximately three years as of March 2024. The victim allowed Mr. Williams to stay at her residence, but Mr. Williams did not live there. On March 9, 2024, the victim was pregnant with Mr. Williams' child and Mr. Williams knew she was pregnant. That day, Mr. Williams became verbally and physically aggressive with the victim. He put both his hands around the victim's throat and squeezed so that the victim was unable to breathe. Mr. Williams then threw the victim to the ground, released his grip on her throat, and kicked and

punched her. Eventually, Mr. Williams stopped attacking her and left the room. The State proffered that the victim had a video camera in her bedroom that captured the incident, but the State did not have a copy of the video.

¶ 8 On March 20, 2024, the victim and Mr. Williams got into a verbal argument. Mr. Williams took her dog, but eventually returned it. The victim returned to her residence later that day to discover it had been "trashed." Mr. Williams had broken into her home, destroyed some of her belongings, and stolen others. She had cameras inside of her home, but the memory cards had been removed from the cameras. The victim called the police. While she was waiting for the police to arrive, she observed Mr. Williams driving slowly along her block. The victim was afraid, so she drove to the police station. At the police station, she reported both the March 9, 2024, incident and the break-in. She filed a police report and later sought an order of protection against Mr. Williams.

¶ 9 Mr. Williams was arrested in connection with the incident on April 11, 2025.

¶ 10 Mr. Williams' criminal background included a 2015 conviction for aggravated criminal sexual assault, which was "domestic related," for which he served six years in prison. He also had a 2015 "domestic conviction," for which he was sentenced for 364 days. The State presented the facts from the 2015 aggravated criminal sexual assault case, which involved Mr. Williams strangling his then-girlfriend with the cord from a clothes iron. After strangling her unconscious and pouring water on her face to wake her up, he penetrated her both anally and vaginally with his penis.

¶ 11 The State also presented the facts from a domestic incident that occurred on September 27, 2015. Officers responded to a call of a "battery in progress for a male beating on a female." When officers arrived, Mr. Williams fled the scene and the officers pursued him on foot. The officers caught up with Mr. Williams who kicked them and was difficult to handcuff. The victim reported

that Mr. Williams threw a "metal pole" at her, although the pole did not strike her. The State then summarized the facts of two other domestic violence incidents involving Mr. Williams and a woman he was dating where Mr. Williams verbally and physically assaulted the victim. Mr. Williams also had two convictions for armed robbery, one in 2003 and one in 2007. In both cases, he was sentenced to six years' imprisonment.

¶ 12    The State concluded that the proof was evident and the presumption great that Mr. Williams committed a detention eligible offense. The State argued that Mr. Williams posed a real and present threat to the safety of the victim based on the specific articulable facts of the case, and posed a real and present threat to any individual who was in a relationship with him given his history and propensity for domestic violence. Finally, the State asserted that no condition or combination of conditions could mitigate the risk that Mr. Williams posed because he committed this offense while on parole for another felony and, prior to the current case, was in custody on another parole violation, indicating that he was unable or unwilling to abide by court orders. The State maintained that electronic monitoring and home confinement would not be sufficient in this case to mitigate the risk Mr. Williams posed. The State therefore asked that the court detain Mr. Williams pending trial.

¶ 13    In response to the court's question regarding why Mr. Williams was not arrested until more than a year after the incident, the State indicated that the detective assigned to the case had difficulty contacting the victim. The case was suspended pending contact with the victim.

¶ 14    Defense counsel asked that Mr. Williams be released on reasonable conditions. Mr. Williams owned his own commercial cleaning business and was no longer in a relationship with the victim. Defense counsel noted that it had been a year since the incident took place and there was no indication that Mr. Williams had been trying to contact the victim or had been involved in

any other cases. Counsel noted that the State asserted there was a video of the incident, but the video had not been tendered. Counsel maintained that GPS or electronic monitoring was not the same as being on parole.

¶ 15    The State responded that the reason Mr. Williams had not been involved in any additional incidents since March 2024 was because he had been in custody since April 11, 2024, when he was arrested for a parole violation.

¶ 16    Pretrial services indicated that Mr. Williams had a "yes" for new violent criminal activity flag, a four for new criminal activity scale, and a two for failure to appear. "If released, the PSA score coincides with Supervision Level 3, which would be maximum conditions. There is also a DVSI score of a 7."

¶ 17    The court found that the State had shown by clear and convincing evidence that the proof was evident or the presumption great that Mr. Williams committed the detainable offense of domestic battery by strangulation. The court also found that the State had shown by clear and convincing evidence that Mr. Williams posed a real and present threat to the safety of any person or persons or the community. Specifically, the specific articulable facts of the case showed that Mr. Williams escalated a verbal disagreement into a physical attack where he strangled the victim. The court found it was "understandable" that the victim did not immediately report the incident to police, but only reported it later after Mr. Williams continued to harass her.

¶ 18    The court also considered Mr. Williams' criminal history which it believed was indicative of his violent and abusive behavior. The court found that Mr. Williams posed a threat not only to the victim, but to "all intimate partners" and the community at large. The court noted that Mr. Williams' criminal history involved not only domestic matters, but also resisting arrest and armed

robbery convictions. The court observed that Mr. Williams would have been on mandatory supervised release at the time he committed the alleged offenses in March 2024.

¶ 19    The court noted that it had to consider a number of factors when the alleged offense is aggravated domestic battery, including whether the alleged incident involved harassment or abuse as defined by the Domestic Violence Act and whether the person has a history of domestic violence. The court determined that electronic monitoring and home confinement would not be sufficient to keep victims of domestic violence safe "when somebody is bound and determined to cause them harm." The court therefore found that the State had satisfied its burden on each element and ordered Mr. Williams detained pretrial.

¶ 20                                B. Continued Detention

¶ 21    On May 5, 2025, Mr. Williams filed a "motion for relief under the pretrial fairness act." In the motion, Mr. Williams asserted, *inter alia*, that the court erred in detaining him pretrial because the State alleged to have a video of the incident, but no video was presented, he had a failure to appear score of two, and had never been charged with failing to register for the sex offender registry, which indicated he could be trusted to show up to court.

¶ 22    It is unclear from the record whether the trial court ever addressed this motion for relief. No order or hearing appears in the record filed on appeal. Nonethless, on May 20, 2025, Mr. Williams, through new counsel, filed a motion for pretrial release. In the motion, Mr. Williams first noted that a detention hearing was held on April 14, 2025. He alleged, however, that he was "being held in custody without a verified petition by the State or a hearing pursuant to the" Pretrial Fairness Act. He maintained that he did not pose a real and present threat to the safety of any person or persons or the community and that any conditions placed on him would sufficiently mitigate any possible risk he posed. In contradiction to the evidence presented at the initial hearing,

Mr. Williams asserted that he had "no prior criminal history" and had no history of violating any conditions similar to those that would be imposed in this case. He contended that he was working prior to his arrest and supported minor children. Mr. Williams maintained that continued detention would deprive him of the right to consult with his attorney in private and to help identify and locate witnesses on his behalf.

¶ 23     The court held a hearing on Mr. Williams' motion for pretrial release on June 23, 2025. The State represented that, prior to the hearing, it shared with defense counsel the surveillance footage of the incident that the State referenced at the initial hearing. The surveillance footage is not included in the record filed on appeal, but defense counsel acknowledged viewing the footage.

¶ 24     In support of pretrial release, Mr. Williams' counsel repeated the contentions raised in the motion, including that Mr. Williams supported minor children, was working prior to his arrest, and had "strong ties" to the community. Counsel asked that Mr. Williams be placed on electronic monitoring so that he could aid in preparing his defense for trial.

¶ 25     In response, the State repeated the facts from its proffer at the initial hearing. The State contended that the surveillance video corroborated the facts in the proffer. The video depicted the victim sitting on the bed with her hands by her side. Mr. Williams approached the victim and struck her multiple times in the head before placing his hands around her throat. The State also reiterated Mr. Williams' criminal history.

¶ 26     In reply, defense counsel maintained that Mr. Williams was "probationable," noting that he was afforded the presumption of innocence and there was a "strong push that pretrial release be granted in circumstances." Defense counsel noted that Mr. Williams' fiancée was present and that she was "I believe, willing to have him housed" at her residence. Defense counsel noted that Mr.

Williams was "away" from the victim and "[i]t has nothing to do with that." Defense counsel acknowledged that Mr. Williams had been in continuous custody since April 11, 2024.

¶ 27    The trial court denied the motion for pretrial release, finding that continued detention was necessary to protect the community and that no other conditions could be imposed to reduce that risk.

¶ 28    The parties next appeared in court on August 28, 2025, where defense counsel represented that he filed another motion for release from detention. A written motion does not appear in the record filed on appeal, but, at the hearing, defense counsel asserted that there had been a change of circumstances that necessitated Mr. Williams' release from custody. Counsel informed the court that Mr. Williams owned a cleaning business that he had been working very hard to operate. Because of his incarceration, the business was "suffering greatly." Counsel represented that Mr. Williams was the "breadwinner" for his family and supported minor children. Counsel asked the court to reconsider the conditions of release so that Mr. Williams could return to work.

¶ 29    The court denied the motion, recounting the facts from the State's proffer and finding that Mr. Williams' continued detention was necessary to protect the victim and the community at large.

¶ 30                                C. Motion for Relief

¶ 31    On September 11, 2025, Mr. Williams filed a motion for relief (titled, "Motion for Review of Denial of Pretrial Release Pursuant to Supreme Court Rule 604(h)(2)"). The motion for relief largely mirrored the motion for pretrial release filed on June 23, 2025. Mr. Williams again asserted that he was being held in custody without a verified petition by the State or a hearing pursuant to the Pretrial Fairness Act (despite noting in the motion that a hearing took place in April 2025). Mr. Williams also asserted that he enjoyed a presumption of innocence, that electronic monitoring

would sufficiently mitigate any risk that he posed, that he was working prior to his arrest, and that he supported minor children.

¶ 32    The court denied the motion for relief, finding that there were no set of conditions that would "protect society" if Mr. Williams were released pretrial. The court noted that the original judge who ruled on the State's initial detention petition found that Mr. Williams posed an "extreme risk" to society and the court did not believe that the conditions proposed by Mr. Williams and the assurances he made would sufficiently mitigate that risk.

¶ 33    Mr. Williams filed a timely notice of appeal from the trial court's denial of his motion for relief on October 14, 2025. We find that we have jurisdiction to consider the merits of this appeal. Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024).

¶ 34                                    II. ANALYSIS

¶ 35    On November 25, 2025, Mr. Williams filed in this court a Notice in Lieu of a Rule 604(h) Memorandum, indicating that he wished to stand on the arguments made in his motion for relief. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, the issue before this court is whether Mr. Williams continued pretrial detention is necessary to avoid a real and present threat to the safety of any person or persons or the community or to prevent his willful flight from prosecution. See 725 ILCS 5/110-6.1(i-5) (West 2024). Although Mr. Williams did not appeal from the trial court's initial detention determination, he does not appear to challenge the court's finding that the State presented sufficient evidence that he committed a detainable offense or otherwise challenge the trial court's initial detention determination.

¶ 36    Under the Pretrial Fairness Act, we presume that all defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). The State has the burden of justifying pretrial detention by proving by clear and convincing evidence that the proof is evident or the presumption

- 9 -

great that the defendant has committed a detainable offense, that the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no condition or combination of conditions can mitigate the threat the defendant poses. *Id.*

¶ 37 If the trial court detains a defendant pretrial, the statute imposes a continuing obligation for the court to assess whether continued detention is necessary at subsequent appearances. *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. At each subsequent appearance, the court must find "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022); *id.*

> "Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the [statute] does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

Where, as here, the parties proceed solely by proffer and no live testimony is presented, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51 ("Accordingly, when parties to a pretrial detention hearing proceed solely by proffer, the reviewing court stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature.").

¶ 38 In Mr. Williams' motion for relief, he asserted that his continued detention was not necessary because he did not pose a real and present threat to the safety of any person or persons or the community, the "State cannot produce any evidence of any danger" he poses, and "[a]ny

conditions" placed on him would sufficiently mitigate any possible risk he posed, including curfew, GPS, or electronic monitoring. Mr. Williams maintained that he would comply with "all regulations" of electronic home monitoring and that he had "no history of violating any conditions similar to those which would be imposed upon his release." He further contended that he currently resides in Chicago and would remain within the jurisdiction if released pretrial. He assured the court that "he will provide the Court, and his attorney, with a current address at all times while this case is pending." He asserted that further detention deprived him of the right to consult with his attorney in private and deprived him of the right to help identify and locate witnesses on his behalf. In counsel's arguments before the trial court, he asserted that Mr. Williams owned and operated a cleaning business and supported minor children, which he had been unable to do since being detained.

¶ 39    In making these assertions, Mr. Williams fails to address the proffered facts of this case, his lengthy criminal history, and the statutory factors relating to dangerousness. First, the State's proffer showed that Mr. Williams escalated a verbal argument with his then-girlfriend into a physical altercation where he strangled and beat her. According to the State, there is a surveillance video of the altercation that corroborates the proffer. Although the video is not included in the record filed on appeal, the record indicates that the State tendered the video to defense counsel, and defense counsel does not dispute the State's characterization of the video. Furthermore, 11 days after strangling and beating the victim, Mr. Williams broke into her residence and "trashed" it. He removed the memory cards from her surveillance camera and stole other items. This second incident prompted the victim to contact police and seek an order of protection.

¶ 40    Although Mr. Williams asserted that he no longer had any involvement with the victim and had not contacted her since March 2024, the State pointed out that Mr. Williams had been

continuously incarcerated since April 2024 on a parole violation. This evidence supports the trial court's finding that Mr. Williams at the very least posed a significant threat to the victim in this case.

¶ 41    In addition, Mr. Williams' criminal history demonstrates that he posed a threat not only to the victim, but to any romantic partner. Mr. Williams' criminal history involved multiple other instances of domestic violence, including a prior incident where he strangled and sexually assaulted a romantic partner. Mr. Williams' criminal background also included other crimes of violence, including resisting arrest and armed robbery.

¶ 42    Finally, as the trial court recognized, many of the statutory factors to be considered in making a determination of dangerousness weigh in favor of a finding that Mr. Williams poses a real and present threat based on the facts of the case. 725 ILCS 5/110-6.1(g) (West 2024). The offense charged is a crime of violence, Mr. Williams has a history of prior crimes of violence, abuse, and assaultive behavior, the identity of the person or persons who are threatened by Mr. Williams are domestic partners, and Mr. Williams was on mandatory supervised release at the time of the alleged offense. 725 ILCS 5/110-6.1(g)(1)-(3), (8) (West 2024). Accordingly, we find that the trial court appropriately found that Mr. Williams' continued detention was necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 43    We further find that the trial court correctly found that neither home confinement nor electronic monitoring would be sufficient in this case to mitigate the risk Mr. Williams posed. The State's proffer and Mr. Williams' criminal history show that he is a danger not only to the victim in this case, but to any romantic partner, and, indeed, to the community at large. Defense counsel represented that Mr. Williams had a fiancée who was willing to house him if he were released

pretrial. Placing Mr. Williams on electronic monitoring or home confinement in a home where a romantic partner is present would not be a suitable alternative to detention based on the specific and articulable facts of this case.

¶ 44    Moreover, the State represented that Mr. Williams had been incarcerated since April 2024 based on a parole violation. The trial court noted that Mr. Williams would have been on mandatory supervised release at the time of both incidents in March 2024 based on his conviction for aggravated criminal sexual assault in 2015. This history of failing to abide by prior conditions of release placed upon him further shows that continued detention is necessary to avoid the safety risk Mr. Williams poses. See *Hongo*, 2024 IL App (1st) 232482, ¶ 36; *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33. Therefore, we cannot say that the trial court erred in ordering Mr. Williams' continued detention.

¶ 45    We note that in each of his post-detention motions, including his motion for relief, Mr. Williams asserted that he "enjoys a presumption of innocence throughout his case, including pretrial." We believe that this contention is misplaced. Other districts of this court have explained that in the pretrial context, an assertion that pretrial detention is not warranted based on a presumption of innocence is an attempt to put the cart before the horse. *People v. Smith*, 2024 IL App (2d) 240168, ¶ 22.

> "The State may 'permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt,' and the 'confinement of such persons pending trial is a legitimate means of furthering th[e] [State's] interest.' *Bell v. Wolfish*, 441 U.S. 520, 534 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), and *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). Consequently, the presumption of innocence, a presumption that remains intact until a judgment of conviction, has 'no application to a determination of the rights of a

pretrial detainee *** before his trial has even begun.' *Id.* at 533; *People v. Presley*, 2023 IL App (5th) 230970, ¶ 39." *Smith*, 2024 IL App (2d) 240168, ¶ 22.

Accordingly, Mr. Williams' reliance on the presumption of innocence does not negate the determination that there is sufficient evidence to support his continued pretrial detention.

¶ 46                                    III. CONCLUSION

¶ 47    For the reasons stated, we affirm the trial court's order continuing Mr. Williams' pretrial detention.

¶ 48    Affirmed.