2026 IL App (1st) 260046-U

FIRST DISTRICT,
SIXTH DIVISION
April 10, 2026

No. 1-26-0046B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 25 CR 1295201 |
| | ) | |
| GABRIEL R. MEDINA, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held:*  We affirm the trial court's order denying pretrial release to defendant charged with murder.

¶ 2    Defendant Gabriel Medina was charged with first-degree murder in the shooting death of Timothy Martin. The shooting occurred at a birthday party for Gabriel's mother, Tina Rocha. Timothy, who was Tina's boyfriend, physically assaulted Tina, refused to leave the house when

asked, and instead got into a fight with Gabriel's brother. Gabriel fired multiple shots at Timothy, fatally wounding him.[1]

¶ 3      Gabriel was held under the Pretrial Fairness Act (725 ILCS 5/110-1 *et seq.* (West 2024)), and his motion for relief was denied. Gabriel appeals, and we affirm.

¶ 4      I. BACKGROUND

¶ 5      According to the State's factual proffer, the shooting occurred on October 17, 2025, at Tina's birthday party at her apartment. Among those present were Tina's boyfriend Timothy, Timothy's son, Tina's sons Gabriel and Arturo Rodriguez (both of whom resided at the apartment), Tina's daughter Destiny Rocha, and friends.

¶ 6      During the party, Tina went to use the bathroom. Timothy banged on the bathroom door and demanded to be let in. When Tina opened the door, Timothy yelled at her, grabbed her by the hair, and pushed her. He then grabbed her arm and threw her to the ground. Destiny saw these events and reported them to Arturo, who told Timothy to get out of the house. Timothy ignored Arturo's command to leave and went back to his DJ equipment. Arturo then threw a cup at him and a glass mug; both missed. Timothy and Arturo then began "pushing each other back and forth" and Arturo punched Timothy in the face. Neither man had a weapon.

¶ 7      While this was occurring, Gabriel was in his room. He came out and asked what was going on. Tina told him that Timothy threw Tina on the floor, at which point Gabriel went back into his room and re-emerged with a loaded semi-automatic Glock in his hand. Timothy said he was not afraid of the gun and lunged at Arturo. Gabriel raised the gun and shot Timothy five times.

---

[1] We are referring to the individuals by first names for clarity and to avoid confusion between those who have the same or similar surnames.

¶ 8        Arturo called 911. Timothy was pronounced dead at the scene. Gabriel remained at the scene, cooperated with police, and admitted that he was the shooter, both at the scene and after being given *Miranda* warnings.

¶ 9        Gabriel was 23 years old, held a FOID card, and had no prior criminal record. The victim, Timothy, was 53 years old and stood roughly four inches taller than Gabriel. Timothy had a criminal record, including a 2017 conviction for aggravated battery for stabbing a security guard at a gas station.

¶ 10       At Gabriel's initial detention hearing on October 19, 2025, the trial court denied pretrial release. Based on Gabriel's admission that he was the shooter, the court found the proof was evident that he committed first-degree murder. The court additionally found he posed a real and present threat to the safety of persons in the community, due to "the obvious [fact] that defendant posed a threat to the victim" and the fact that ricocheting bullets could have injured his family members. The court also mentioned that while Gabriel had a valid FOID card, his gun was not registered and, thus, "illegal." As to whether any conditions of release could mitigate the threat, the court found that home confinement would be ineffective because Gabriel committed the crime in his home, had the propensity to harm others if angered, and acted quickly in reacting and shooting Timothy based on events his sister told him.

¶ 11       Gabriel, through counsel, filed a motion for relief from the detention order. A hearing was held on December 4, 2025, before a different judge. Gabriel's counsel argued the proof was not evident nor the presumption great that Gabriel committed first-degree murder, since he acted in defense of himself and his family. Counsel further argued that Gabriel did not pose a threat to anyone in the community. "[T]he only safety issue in that apartment that night was the decedent," a felon with a history of violence who assaulted residents and was allegedly larger

and stronger than either Gabriel or his brother. After the shooting, Gabriel did not flee the scene and was "cooperative" and "calm"; he admitted to police that he was the shooter and directed them to the gun, which he had purchased lawfully. Counsel also argued there was no registration requirement for Gabriel's gun. Lastly, counsel argued that any threat posed by Gabriel could be mitigated by conditions of release such as curfew or home confinement.

¶ 12     The court denied Gabriel's motion for relief. It acknowledged that Gabriel would likely raise self-defense at trial, but found the proof was evident and presumption great that he committed a detainable offense, whether it ended up being first-degree or second-degree murder. The court further observed that Gabriel "brought a gun to a fistfight" and reiterated that, because the crime occurred in the home, no conditions of release could mitigate the threat Gabriel posed to people in his home.

¶ 13                                    II. ANALYSIS

¶ 14     Under the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). As relevant to the instant appeal, the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed a qualifying offense; (2) defendant's pretrial release poses a real and present threat to the safety of any person, persons, or the community; and (3) no condition or combination of conditions can mitigate said threat. *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 20. Because the parties proceeded by proffer, our review of the court's detention order is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Gabriel has opted not to file an appellate brief and instead rests upon his motion for relief in the trial court.

¶ 15     We agree with the trial court's finding that the proof is evident that Gabriel committed a qualifying offense, notwithstanding any claim of self-defense he may raise at trial. As the court

observed, both first-degree and second-degree murder are detainable offenses under the Act. 725 ILCS 5/110-6.1(a)(1.5) (eff. Aug. 15, 2025). See also *People v. Smith*, 2024 IL App (2d) 240168, ¶ 21 (defendant's claim of self-defense did not preclude pretrial detention, since "the question of whether a defendant's use of force was *ultimately* justified is a matter resolved at *trial*" (emphasis in original)).

¶ 16      In making a dangerousness determination, the court may consider but is not limited to the following factors: the nature and circumstances of the offense; the defendant's history and characteristics; the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; any statement made by defendant; the defendant's age and physical condition; the victim's age and physical condition; whether the defendant has access to weapons; whether the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal, or completion of sentence for another offense; and any other factors with a reasonable bearing on the defendant's propensity for violent behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 17      Gabriel argues the State failed to prove by clear and convincing evidence that he poses a real and present threat to anyone given his lack of criminal history and the circumstances surrounding the shooting. We disagree. We do not discount the fact that Timothy assaulted Gabriel's mother in her own home and refused to leave when asked. However, Timothy was outnumbered by Gabriel and his family members. Gabriel did not see what had transpired, but when he was told about it, he went directly into his room to get a loaded gun. Rather than stepping in between Timothy and Arturo, trying to defuse the situation, or call police, he shot Timothy five times in close proximity to family members and others. Gabriel's escalation of the

situation by "bring[ing] a gun to a fistfight" and shooting Timothy, who was unarmed, reflects he is a threat to others and shows disregard for their safety.

¶ 18    We note that in oral argument before the trial court, defense counsel argued numerous facts allegedly from videotaped witness interviews, which are not in the record. According to counsel's argument, Gabriel's room was next to the kitchen, where the fight between Arturo and Timothy was taking place. Gabriel supposedly witnessed the fight and witnessed Timothy shoving Tina aside when she tried to intervene. Gabriel allegedly did not initially resort to violence but told Timothy to leave; Timothy refused and then charged at both brothers, who were standing together, whereupon Gabriel fired in self-defense.

¶ 19    We express no opinion on defense counsel's unverified allegations, as they are not supported by any record evidence, but we note that nothing precludes defense counsel from presenting testimony or documentary evidence in conjunction with a future motion for relief, should additional discovery materials become available.

¶ 20    Lastly, Gabriel argues that any threat he poses could be mitigated by conditions of release such as curfew or home confinement. He has surrendered his firearms and represents that he will not have access to any other firearms if released pretrial. However, conditions placed on him would not prevent him from having access to other deadly weapons or firearms of those he lives with. As to curfew and home confinement, such restrictions would not prevent future incidents of violence if, for instance, Gabriel perceives he or his family members are mistreated, disrespected, engaged in a shouting or shoving match, or domestically abused. Nor would it prevent Gabriel from placing others nearby at risk within the home where the offense occurred. While Gabriel's use of deadly force may turn out to have been justified, at this juncture, under the specific, articulable facts set

forth in the record, we conclude the trial court did not err in finding no condition or combination of conditions exist that could mitigate the danger defendant posed to the community.

¶ 21                                    III. CONCLUSION

¶ 22          For the foregoing reasons, we affirm the judgment of the trial court.

¶ 23          Affirmed.